### KINGSLAND *v.* MAYOR, ETC., OF NEW YORK.

### WILLIAMS *v.* SAME.

*(Supreme Court, General Term, First Department. January 28, 1889.)*

1. EMINENT DOMAIN—COMPENSATION—LAND FORMERLY TAKEN.

In an action for damages for property taken by a city without compensation, it appeared that the city took the property under a claim of right, although at the time the city might have taken it by condemnation proceedings. *Held*, that the measure of damages was the value of the property at the time it was taken, together with interest, and not what the property would be worth at the present time, relieved of the obstructions placed thereon by the city.

2. SAME—COMPUTATION OF VALUE.

The referee based his finding of the value of the property largely on the rental paid, which was $8,000, but it appeared that this rental was a high one, and that the lessee was willing to pay $8,000 to be relieved from the lease. The referee ascertained the value of this part by capitalizing it at 5 per cent., although the lessee

paid no assessments. There was no evidence that when the lessor paid the assessments he only received 5 per cent. on the value of his property, but there was evidence that 6 per cent. was a fair and ordinary rental. Plaintiffs' witnesses estimated the value to be between $160,000 and $170,000, while defendants' witnesses placed it at from $80,000 to $90,000. *Held,* that $130,000 was a fair valuation.

Cases submitted on agreed statement.

The plaintiffs, William M. Kingsland, as sole surviving trustee, etc., and Henry K. S. Williams, sought to recover the value of water-front property taken by defendants without compensation, under a claim of right based upon acts of 1870 and 1871 relating to the department of docks. The cases were referred to a referee. Motion by plaintiffs for final judgment on the report of the referee, and motion by defendant to set aside the report, and for a new hearing.

Argued before VAN BRUNT, P. J., and DANIELS and BARTLETT, JJ.

*W. W. Macfarland,* for plaintiffs. *Peter B. Olney,* for defendants.

VAN BRUNT, P. J. These proceedings were initiated by the submission of an agreed case to the general term, under section 1279 of the Code of Civil Procedure. Upon the hearing of the case by the general term interlocutory judgments were entered in favor of the plaintiffs, directing a reference to a referee, pursuant to the terms of said submission, to take proof in relation to the value of the plaintiffs' property described in the submissions in 1881, and also at the time of the hearing before said referee, both with and without the unlawful obstruction to the full enjoyment of said property placed by the defendants, as well as other matters to which it is not necessary here to make reference. In the *Case of Williams* an appeal was taken from this interlocutory judgment to the court of appeals, and such judgment was in said court affirmed. Thereupon hearings were had before the referee, and the referee made his report. The defendant, being dissatisfied therewith, moved to set it aside, and the plaintiffs moved for judgment thereon, and it is upon these motions that the questions are now presented to the court. If this had been a reference for the referee to hear and determine the questions which were involved, it is clear that for errors committed it would be necessary to order a new trial. There seems to have been the greatest license permitted in the taking of testimony, and flagrant errors seem to have crept into the procedure. But in view of the fact that the referee was only authorized by the order to take proof of the facts, and report such testimony taken by him, with merely a statement of the facts deemed to be proved by it, the whole case now comes before the court for its judgment and determination, and it is in the power of the court to exclude from consideration such evidence as was admitted in violation of the rules which ordinarily govern the procedure upon a trial.

The only question which seems to be now open for discussion is the amount for which the plaintiffs should be allowed to take judgment in these proceedings. It is urged upon the part of the counsel for the defendant that the court should hold that the spaces between the harbor-master's line of 1857 and Thirteenth avenue, which are the subject of these actions, are subject to public use as wharves or bulk-heads, and that the plaintiffs have not the right to use, occupy, or possess the same to the exclusion of the public, and that the court should adopt a valuation of the plaintiffs' rights upon that basis. It does not seem to us that this question is now open for discussion. In the *Case of Williams* there is an express adjudication that said strip of land is not subject to public use, and said bulk-head or wharf is a private bulk-head or wharf. This judgment has been affirmed by the court of appeals, and consequently this adjudication is the law of the case. It is true that in the *Kingsland Case* no such express adjudication is found, but the facts are precisely the same, and, if such adjudication was correct in the *Williams Case,* it must necessarily follow in the *Case of Kingsland.* We do not therefore

consider it at all necessáry, nor would it be proper for us, to discuss in the present condition of these cases the question above presented.

It only remains, therefore, for us to determine the principles upon which the compensation is to be fixed, and to fix the amount thereof. Although nowhere upon the previous hearings of these cases has it been exactly determined as to whether the plaintiffs should have the value of their property assessed as of the time of the alleged trespass, namely, in 1881, and recover that amount, with interest thereon, or whether they should be allowed to recover what the property would be worth at the present time, relieved of the obstruction complained of, yet it has been distinctly intimated that the former is the true rule of damage, and it seems that such is the principle which must control this question. The trespass committed, and the taking of the property, by the city of New York, was done under what was believed to be a claim of right, and in the performance of a public duty. The city had the right at that time to take possession of this property by condemnation proceedings, but, believing itself to be the owner of it, took possession of the property, and appropriated it to public uses which were authorized by law; and it would seem, therefore, that the plaintiffs would receive complete indemnity were they paid the value of the property at the time it was taken possession of by the city, together with interest to the present time.

The value of expert testimony is strikingly illustrated by the evidence given in reference to the value of the properties in question in the year 1881, one of the witnesses upon the part of the defendants swearing the value of the Kingsland property at that time to have been $40,000; a witness upon the part of the plaintiff swearing to a value of $250,000 for the same identical piece of property; and we have graduations between these points, the witnesses for the plaintiffs all placing the value nearly double that which any of the witnesses for the defendant have testified to. It is a difficult matter, in view of such divergent testimony, much of which must necessarily have its foundation in fiction and fancy, and not in truth, to come to a satisfactory and definite conclusion in regard to the value of the properties in question. The learned referee, in the conclusion at which he has arrived, was very strongly influenced by the fact that the Kingsland property had been rented for a number of years to the Delaware, Lackawanna & Western Railroad at a rent of $8,000 per year, and it appears that in his conclusion as to the value of these properties he has been largely influenced by this fact, and he has ascertained the value by capitalizing this rent at the rate of 5 per cent. It appears, however, from the evidence in this case that this rental was a high one, and that it was a rental of such a character that the company was willing to pay $8,000 to be relieved from the lease, which, if such rental embraced only the fair value of the use and occupation of the property, it is fair to presume they would not have been willing to do. And the referee has fallen into another error in ascertaining the value of this property by capitalizing it at 5 per cent., for the reason that the lessee, although it paid the taxes, was not compelled to pay any assessments, and therefore the lessor is necessarily presumed to have obtained a larger rent than could have been obtained had the lessee paid both taxes and assessments. No proof has been presented in this case showing that, in any instance where the lessor pays the assessment, he only receives 5 per cent. upon the value of the property rented. In fact, the evidence upon the part of the city in respect to leases in this vicinity tended to show that 6 per cent. upon the value, under such circumstances, was a fair and ordinary rental. It is not entirely clear from the evidence, as far as we have been able to discover, whether the capitalization at 6 per cent. was in a case where the lessor paid both taxes and assessments, or where the lessee paid the taxes and the lessor paid the assessments. But it is certainly an excessive rate where the lessor pays the assessments upon property of this description to capitalize it at 5 per cent. A majority of the witnesses—and

it is not necessary to go over their evidence in detail—upon the part of the plaintiff seem to place the value of the Kingsland property in 1881 at from $160,000 to $170,000; the Williams property being one-half this value. A majority of the witnesses upon the part of the defense place the value in 1881 of the Kingsland property at from $80,000 to $90,000. As has already been seen, it would appear that the valuation of $160,000 was excessive, in view of the rent paid by the Delaware, Lackawanna & Western Company; and it is fair to assume from the nature of all the testimony that the valuation of $90,000 was less than the property was actually worth, or would have brought at that time; the difference between the lowest valuation of the plaintiffs' witnesses and the highest of the defendant's witnesses being about $70,000. The fact that the Delaware, Lackawanna & Western Company were willing to pay $8,000 for a cancellation of the lease having only five years to run, showed that they considered the lease to be a burdensome one, and that the rental was largely excessive. It would then appear from this transaction that $7,000 would be a high rental for the Kingsland property in 1881; and, assuming such to be the true rental value, it is apparent that it should be capitalized, in view of the fact of the lessor paying the assessments, at about $130,000. This seems to be the value of the strip of upland west of Thirteenth avenue, together with the water-rights belonging to the plaintiff Kingsland, and one-half of this sum to be the value of the smaller strip belonging to the plaintiff Williams. In consideration of these values, the court is not to consider the accretions claimed, nor the rents collected by the city from their unlawful structures. It is clear that under the submission no such question was presented or can be considered; and, the parties having determined the facts upon which the court is to render judgment, the court has no power to alter the submission or to extend its scope or operation. The best judgment, therefore, to which we have been able to arrive upon this discordant and discrepant testimony is that the plaintiff Kingsland should have judgment for the sum of $130,000, with interest from 1881; and the plaintiff Williams should have judgment for the sum of $65,000, with interest from the same time. The plaintiffs are entitled to the costs of the proceedings in each case, and the motions to set aside referee's report should be denied, with $10 costs in each case. All concur.