evidence of such surrender, relying upon a new lease made by the plaintiff to a third party, one Weimar, for the balance of the unexpired term of the lease upon which suit is brought, and also upon the ordinary guaranty of such lease, which was executed by the defendant and another party, who thus became apparently co-sureties of the performance of the second lease by Weimar. It was for the purpose of rebutting any inference adverse to him which might arise from these facts that the plaintiff endeavored to show what the agreement between the parties which culminated in the giving of these papers actually embraced. The plaintiff's contention is that the second lease was made pursuant to a certain stipulation contained in the first lease to the effect that, in case of any default on the part of the defendant, or if the premises should become vacant during the term of the lease, he, as landlord, might resume possession of the premises, and relet the same for the remainder of the term at the best rent that he could obtain for account of the tenant. The ground upon which the ruling of the court below was based was that the matters sought to be brought out by this line of examination were in the nature of preliminary negotiations between the parties, which could not be proven for the purpose of in any way affecting or controlling what is stated to be the written agreement between them. What is claimed to be such written agreement is the second lease made between the plaintiff and Weimar, and the contract of suretyship attached thereto, made between the plaintiff on the one hand and the defendant and his so-called co-surety on the other. We do not think that this claim is a sound one. It is not disputed by the plaintiff that these papers were executed, nor does he seek to vary the terms of either of these documents. What he did desire to show was what the agreement really was which led to the execution of these papers, that the surrender of the original lease was not contemplated, and that the papers above mentioned were executed and delivered in pursuance of the clause in the first lease providing for reletting on account of the tenant. This, we think, he should have been permitted to do. The judgment must therefore be reversed.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event.

---

(54 App. Div. 256.)

### HYNES v. MANHATTAN RY. CO.

(Supreme Court, Appellate Division, First Department. November 9, 1900.)

EMINENT DOMAIN—COMPENSATION.

Where an elevated railroad company appropriates to its own use the easement of an abutting property owner in a street, without such owner's consent, or any legal rights, instead of acquiring title to it by condemnation, in determining the amount of damage to the fee of such owner, the condition of the property and the benefits to be derived from the operation of the road at the time of the trial are to be considered, and not the damages and benefits at the time of the construction of the road.

Appeal from special term, New York county.

Action by William A. Hynes against the Manhattan Railway Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

A. A. Wheat, for appellant.

J. A. Weekes, Jr., for respondent.

PATTERSON, J. This is an ordinary action against an elevated railway company for an injunction and for damages to rental value. The premises are No. 38 Third avenue, on the southwest corner of 107th street, with a frontage of 20 feet and a depth of 73 feet. The plaintiff became the owner of the premises in 1885. The action was commenced in 1890, and the court allowed $1,500 for damage to the fee value and $2,081 rental damage, being at the rate of $150 a year for 14 years. There are three tracks in front of the premises,—one on either side of Third avenue, upon which trains run, with the usual effects of the operation of the road upon abutting property; but, in addition to that, there is a third track between the others, which is used as a place for the storage of cars, and those cars, so stored on the middle track, are there washed and dusted, and mats are shaken, to the great annoyance and discomfort of occupants of property. This enhances very much the ordinary injurious effects of an elevated railway structure upon abutting properties. The only question seriously argued seems to be the reasonableness of the awards. Taking the whole evidence into consideration, I think they were moderate. Some contention is made that the evidence shows that the premises have been and now are benefited by the construction and operation of the defendant's road, and that the proof shows certain facts which would bring the case within Bookman v. Railroad Co., 147 N. Y. 306, 41 N. E. 705, and Malcolm v. Railroad Co., 147 N. Y. 313, 41 N. E. 790; and it is argued that the railroad company coming into substantially vacant and unimproved territory caused values greatly to increase, and that the plaintiff's property participated in that benefit. The evidence in this record does not establish the defendant's contention. The defendant's railroad was put into operation in front of the plaintiff's premises in 1878. The city of New York was built up to about 86th street in 1873. What was then known as "Harlem" was built up in a southerly direction to about 110th street. Ever since 1873, except during what are termed "panic periods," there has been an actual and continuous growth of the city, which cannot be ascribed, especially on Third avenue, between 86th street and 110th street, to the coming of the elevated road. But the question here is not as to the benefit to plaintiff's property, which may have been in excess of the injuries to it at the time the road was built and put in operation. The trespass being a continuing one, the value is to be ascertained, in fixing the fee damage, by the conditions existing at the present time; and, as we have heretofore held, the court must consider whether the operation of the defendant's road is a present benefit, notwithstanding the conditions which existed in that part of the city in which the plaintiff's prem-

ises are located before the elevated road was constructed, and irrespective of benefits the result of past operation of that road. Otten v. Railway Co., 2 App. Div. 396, 37 N. Y. Supp. 982. By that test the judgment appealed from is correct, and should be affirmed, with costs. All concur.