NANCY A. FISH v. CHICAGO, ST. PAUL & KANSAS CITY RAILWAY COMPANY.[1]

October 14, 1901.

Nos. 12,691—(51).

### Ejectment—Damages—Use and Occupation.

In an action in ejectment against a railway company by the owner of the premises, if the defendant answers under the provisions of G. S. 1894, §§ 2658, 2659, demanding that compensation be assessed, the plaintiff may, under the pleadings, in addition to the damages for the taking of the land, recover the value of the use and occupation thereof prior to the time of the trial.

[1] Reported in 87 N. W. 606.

**Map as Evidence.**

> A certain map from the office of the city engineer of St. Paul was received in evidence, and was objected to by defendant on the ground that it did not, on its face, show, or tend to show, the location of the disputed premises. *Held*, conceding, without deciding, that this ruling was erroneous, it was error without prejudice.

**Location Question for Jury.**

> Evidence considered, and *held* sufficient to go to the jury upon the question of the location of plaintiff's premises.

Action of ejectment in the district court for Ramsey county. Defendant answered pursuant to the provisions of G. S. 1894, § 2658, denying plaintiff's title, admitting defendant's taking and occupation of the premises for railway purposes and offering to pay such compensation as might be determined by the jury in case plaintiff should be found to be the owner. The case was tried before Bunn, J., and a jury, which rendered a verdict in favor of plaintiff for $1,303.13. From an order denying a motion for judgment in its favor notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*How, Taylor & Mitchell,* for appellant.

*C. E. Joslin,* for respondent.

LEWIS, J.

Upon the former trial of this action the validity of Laws 1899, c. 284, was called into question, and it was decided (82 Minn. 9, 84 N. W. 458) that the act was valid, and applied to private parties in civil actions. Upon this appeal, the ultimate question involved is whether or not the premises claimed by plaintiff, and which are admitted to be occupied by defendant, were located south of the north boundary of the south ½ of the southwest ¼ of section 5. Three points have been raised by assignments of error:

1. Was it error to receive in evidence the "old brown map" obtained from the office of the city engineer?

2. Was there any evidence on plaintiff's behalf which entitled the case to go to the jury?

3. Did the court err in admitting in evidence the value of the reasonable use and occupation of the property in dispute?

An examination of the "old brown map" develops no identification with any particular property, nor with any locality or city, and, without the aid of extrinsic evidence, does not in any way designate or refer to the premises in question. Before offering the map in evidence, the plaintiff called witnesses who testified, substantially, that a block bounded by Bridget, Flint, Concord, and Custer streets was block 171, according to the original plat of West St. Paul Proper, and that the map in question was made up in the office of the city engineer from original data found in that office, and from observations and surveys made upon the ground. After thus identifying and explaining the map, it was received in evidence against defendant's objection. Conceding, without deciding, that the records, surveys, and plats indicated in the referred-to act must, upon their face, be intelligible without reference to external proof, it was error without prejudice to receive the map in evidence for the reason that there was other evidence upon the same point in the case sufficient to sustain a verdict.

The case contained sufficient evidence to justify the court in submitting to the jury to determine, as a matter of fact, whether or not plaintiff's property was located south of the so-called "quarter-quarter line." Plaintiff introduced in evidence an instrument termed the "Standard Map," from the office of the city engineer, which, according to the testimony, had been made up in that office for the purpose of bringing down to date and correctly representing the locality in question. This map shows the monument at the southwest corner of section 5, is drawn to a certain scale, and there are sufficient data upon the map to identify the premises in controversy. The triangular tract fills out lots 5 and 6 of block 20 of the addition adjoining north. It appears covered with railroad tracks, and lies immediately south of a line which, according to the scale of the map, would presumptively be the quarter-quarter line; and while it is not marked as lots 5 and 6, block 171, or a part thereof, it is so located with reference to adjoining lots in that block, and to the quarter-quarter line, that it may fairly be inferred from the face of the plat that this triangular piece of land is a portion of lots 5 and 6 of block 171 of the original plat

of West St. Paul Proper, and that it is south of the quarter-quarter line.

A prima facie case having been made out by the introduction of the "Standard Map," and by evidence tending to explain and identify this map as a correct representation of the disputed locality, it became necessary for the defendant to show that such evidence was unreliable, for which purpose it introduced in evidence a certain tracing of the part of the original plat of West St. Paul Proper, which it is claimed was made prior to the mutilation of that plat by cutting out a certain portion thereof before it was recorded. This tracing was offered and received in evidence, and upon it appears a line which was testified to as being the so-called "quarter-quarter line," and defendant claimed that if this line, as it appears upon the tracing, were produced easterly, it would show that no portion of the plaintiff's premises was located south of it. The trial court submitted all the evidence upon this point to the jury for determination, and they rendered a verdict in favor of plaintiff. We are of the opinion that the evidence in reference to this tracing, and the other evidence in the case on behalf of defendant, as to the location of plaintiff's premises, did not conclusively rebut, as a matter of law, the prima facie case established by plaintiff. We think it was for the jury to determine, from all the evidence, whether or not plaintiff's property was located south or north of the quarter-quarter line.

This action was commenced by the plaintiff in 1888, and is purely an action for possession of the premises, without any reference whatever in the complaint to the recovery of the value of the use and occupation thereof. The answer denies plaintiff's ownership, but admits that it was and has been in possession of the land for more than a year prior to the commencement of the action; that it has constructed railroad tracks thereon; that this property was necessary to the operation of its line of railway; and prayed that if title should be adjudged to be in the plaintiff that compensation be made to her for the taking of the land. The cause came on for trial in February, 1901, upon this complaint and answer, and the assignments of error raise the question, could plaintiff, under the

pleadings, recover the value of the use of the premises while occupied by defendant prior to the trial?

It has long been the settled law of this state that, in condemnation proceedings commenced by a railway company, damages for the taking of the land are to be assessed as of the time of trial, upon the theory that the appropriation of property takes place at the time it is appropriated by process of litigation, and not at the time of taking physical possession. County of Blue Earth v. St. Paul & S. C. R. Co., 28 Minn. 503, 11 N. W. 73. In such proceedings the plaintiff is not entitled to recover for the use and occupation of the premises, but has an independent cause of action therefor. Leber v. Minneapolis & N. W. Ry. Co., 29 Minn. 256, 13 N. W. 31. It has further been determined that in actions where, under the provisions of G. S. 1894, §§ 2658, 2659, a defendant railway company has answered, as in this case, demanding assessment of compensation, the rule of damages for the taking of the land is to be estimated as of the time of trial, and not as of the time of actual possession. Morin v. St. Paul, M. & M. Ry. Co., 30 Minn. 100, 14 N. W. 460; Adolph v. Minneapolis & P. Ry. Co., 42 Minn. 170, 43 N. W. 848. In the present case, the trial court submitted the question of the value of the use and occupation of the premises in the past to the jury, to be determined in connection with the damages for the taking of the land.

Does G. S. 1894, § 2659, provide that, when a defendant railway company turns an action in ejectment into one of condemnation, the whole subject of compensation is open to determination, without any amendment or change in the pleadings? In the absence of this section, it seems clear that the rights of the parties, so far as the pleadings are concerned, would be the same in cases of this character as where the proceedings were taken in condemnation by the railroad company itself. But we are of the opinion that it was the intention of the legislature by this section to provide that in cases where a railway company took advantage of the statute, and sought to have compensation assessed, the word "compensation" should include all elements of damage which the plaintiff would be entitled to under all the circumstances, whether pleaded or not. In other words, the intention was to make an

exception as to the rule of pleading in cases where a railway company proceeded as in this instance. The language justifying this conclusion is found in the proviso, which reads as follows:

"Provided, that when it appears that the land was so taken or appropriated by and with the consent and acquiescence of the owner, such owner shall not be entitled to recover any rents or profits which accrued prior to demand for compensation for such land, and he shall be limited to a recovery, in such case, to compensation for the land taken, and damages."

It is reasonably to be implied from this language that the question of compensation for the use and occupation of the premises is open for determination between the parties in the action, without further pleadings. It is not entirely clear and satisfactory, but this construction is in harmony with the simplicity and expedition which ought to characterize the settlement of all disputes, and we hold that under such conditions the railway company must be held to anticipate the fact that the plaintiff may recover in such proceeding, without amendment of the complaint, not only the value of the property and the damages at the time of the trial, but also the use and occupation of the premises prior to the trial.

Order affirmed.