Argued March 3, affirmed May 25, 1960

## STATE HIGHWAY COMMISSION *v.*
## STUMBO ET AL
### 352 P. 2d 477

*Robert A. Boyer,* Medford, argued the cause for appellants. With him on the brief were Boyer & Holmes, Medford.

*Charles Peterson,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General of Oregon, L. I. Lindas, John C. McLean and William A. Mansfield, Assistants Attorney General, Salem.

Before McALLISTER, Chief Justice, and ROSSMAN, O'CONNELL and HOLMAN, Justices.

ROSSMAN, J.

This is an appeal by the defendant landowners from a judgment of condemnation obtained against their property in the circuit court for Douglas County by the State Highway Commission, acting in the exercise of its powers of eminent domain. Constitution of Oregon, Art I, § 18; ORS 366.340 et seq.; ORS 374.035 et seq. Various parties and political subdivisions were joined as defendants, but all of these defaulted except numerous heirs of S. R. and C. W. Stumbo, represented by their attorney-in-fact, Robert

Gordon Stumbo. These defendants will hereafter be referred to as the "Stumbos." The principal question presented by this appeal is whether the court below properly fixed the date at which compensation for the property taken is to be ascertained.

The land in question is a narrow strip 16½ feet wide and 200 feet long, located in Douglas County about ten miles north of Wolf Creek. The Stumbos, who own a farm in the neighborhood, used this strip as part of a roadway connection with old Pacific Highway 99. In 1946 the state relocated Highway 99 so as to pass directly over the Stumbo strip. On or about October 1, 1946, the state took physical possession of the land and built the relocated highway over it. No effort was made to purchase or condemn the property, and it does not appear that either the Highway Commission or the Stumbos were aware of the true state of the title. Within the ten year period necessary to perfect adverse possession the Stumbos reasserted their right to the land, and in 1956 notified the Highway Commission of their claim. The commission then attempted to negotiate a purchase, but this effort failed. Thereafter, with full knowledge that the highway was laid over their property, the Stumbos conceived the idea of "subdividing" the strip into square parcels two inches long and two inches wide, and in fact sold some 290 of these minute lots by quitclaim deed.

November 28, 1956, the state filed the present action for condemnation of the property. By virtue of the sale of lots in their subdivision, the Stumbos claimed a market value for the property of $250,274 and suggested a reasonable attorney's fee of $25,000. Their estimate of value was based on the theory that compensation was properly to be assessed at the date

of the filing of the petition for condemnation—November 28, 1956. The trial judge decided, however, that compensation must be fixed at the time of the actual entry upon the land—October 1, 1946—plus an award of legal interest from that date. Accordingly, in his rulings on evidence and in his instructions he restricted the jury to a consideration of the value of the property in 1946. The jury, after hearing the evidence, returned a verdict for $125 plus interest, and judgment was entered for that amount.

The Stumbos do not contend that the award of compensation should have included the value of the improvements placed on their land by the state. The common law maxim, "quicquid plantatur solo, solo cedit," (whatever is affixed to the soil belongs to the soil) has rarely been applied to make a trespassing corporation, invested with the power of eminent domain, pay the value of its own improvements. *Oregon Ry & Nav Co. v. Mosier,* 14 Or 519, 13 P 300 (1887); 1 Orgel, Valuation under Eminent Domain (2d ed) 408; Annotation 34 ALR 1082. The Stumbos claim, however, that they are entitled to have the fair market value of the condemned land assessed at the date of filing the condemnation petition in 1956.

We suppose that the 1956 value of the Stumbo strip, with the highway erased from the landscape, would not differ widely from the 1946 value. Probably the defendants' principal motive in seeking a reversal of this judgment, as evidenced by their first assignment of error, is a desire to get evidence of their subdivision sales before the jury. That evidence, however, was incompetent to establish market value regardless of the date selected for valuation. It is true that the Stumbos retained a fee title to the land in 1956, and that as a general rule market value in

condemnation proceedings may be proved by evidence of the uses to which the land has been, and might reasonably be, adapted, including subdivision. *State Highway Comm. v. Deal,* 191 Or 661, 233 P2d 242 (1951); *State Highway Comm. v. Superbilt Manufacturing Co.,* 204 Or 393, 281 P2d 707 (1955); *State v. Cerruti,* 188 Or 103, 214 P2d 346, 16 ALR2d 1105 (1950). But where, as here, the state has actually even if tortiously taken possession of the property, and it is obvious to all reasonable men that condemnation is the only adequate remedy available to either the state or the landowner, the latter will not be permitted to take deliberate means to increase the measure of his damages. In the unusual situation presented here we think the same rule should apply as though defendants had begun to improve their property after condemnation proceedings were actually begun. For such improvements they could not, of course, recover. Cf. *Keane v. City of Portland,* 115 Or 1, 235 P 677 (1925); *City of Portland v. Lee Sam,* 7 Or 397 (1879); *Re City of New York,* 196 NY 255, 89 NE 814, 36 LRANS 273 (1909); Annotation, 36 LRANS 273 at 276; 2 Lewis, Eminent Domain (3rd ed) § 962, p 1074. If the Stumbos had any doubt of the willingness of the state to condemn their property, they had a right to test it by bringing an "inverse condemnation" proceeding. We have recognized the right of a landowner to bring such an action since our decisions in *Morrison v. Clackamas County,* 141 Or 564, 18 P2d 814 (1933), and *Tomasek v. State,* 196 Or 120, 248 P2d 703 (1952). Under the circumstances, the defendants followed any other course of action at their peril.

The question before us, therefore, is whether this strip of rural land is to be valued at the time of the trespass in 1946 or at the time of the legal condemna-

tion in 1956. In support of the later date, appellants cite a number of Oregon cases which set forth the general rule that damages are to be ascertained at the time of filing the petition for condemnation. Of these, only *State v. Mohler,* 115 Or 562, 237 P 690, 239 P 193 (1925), presents a situation where the condemnor was wrongfully in possession when proceedings were begun. In that case the State Fish Commission had entered under a valid lease and held over after notice to quit was given. During the period of holding over it commenced an action to condemn the property. Although the opinion of this court stated the measure of damages to be "the reasonable market value of the land at the date of the commencement of the action," it is not persuasive here, for the remark viewed in its context was merely an afterthought and was not necessary to the decision of any issue raised by the parties. A similar statement was made in *State ex rel v. Hawk,* 105 Or 319, 208 P 709, 209 P 607 (1922), an earlier action between the same parties, but in that case the state was validly in possession under the terms of the lease when the condemnation action was filed. *State v. Bailey,* 212 Or 261, 319 P2d 906 (1957) is a recent case to approve the general rule, but again no trespass was involved.

Appellants argue that the statutory measures for obtaining property by eminent domain contemplate that the state must institute judicial proceedings before going into possession, and that that demand is conclusive there can be no "taking" before the complaint is filed. Hence, they contend that compensation must be determined at the time of beginning the action. We agree that the procedures set out in ORS 366.375 to 366.392 do not countenance the trespassory invasion by the state in the present case or give it any possessory

estate in the premises. ORS 366.390 requires the Highway Commission to institute proceedings to acquire title before making an entry, though it permits the Commission to enter pending the outcome of the trial. By virtue of ORS 366.380 (7) the state does not acquire a fee until the assessed damages have been paid into court and judgment has been entered. We suppose that a landowner who has not been slumbering on his rights would be entitled to injunctive relief against a contemplated trespass, since, as we have noted, the power of eminent domain, while inherent in the state, "lies dormant until called into exercise by express legislative authority." *State ex rel v. Hawk,* supra. But the act does not, in express terms, attempt to fix the time for ascertaining damages in the ordinary case where condemnation precedes possession, and furnishes no guide where possession, in violation of statute, has become an accomplished fact at the time of filing proceedings to condemn.

The problem before us has been faced by courts of other jurisdictions from time to time. A canvass of authorities reveals that in some cases the date of trespass and in others the date of condemnation have been selected as the correct time at which to assess damages. Many of the decided cases involve not the state or a political subdivision but privately owned corporations invested with the power to condemn for public purposes—usually railroads. Few tribunals, if any, appear to have made a conscious distinction. Whether a discrimination in rule, depending upon whether the condemnor is a public or private body, has any rational basis to commend it we need not decide here.

Where the trespassing condemnor is the state itself or other public body, authority is perhaps equally

divided on whether date of possession or date of condemnation controls the award of damages. Adopting the view that damages should be ascertained at the time of the original taking are the following cases: *United States v. Creek Nation,* 295 US 103, 55 S Ct 681, 79 L Ed 1331 (1935); *Shoshone Tribe v. United States,* 299 US 476, 57 S Ct 244, 81 L Ed 367 (1937); *Parks v. City of Boston,* 32 Mass (15 Pick) 198 (1834); *Donaldson v. City of Bismarck,* 71 ND 592, 3 NW2d 808 (1942); *Dufel v. State,* 198 AD 97, 189 NYS 759 (1921); *Kingsland v. Mayor, etc., of New York,* 51 Hun 639, 4 NYS 682 (1889); *Vanblaricum v. State,* 7 Blackf (Ind) 209 (1844); *Lawrence v. The Second Municipality of New Orleans,* 12 Rob (51 La) 453 (1846). A New Jersey decision, *Doremus v. Mayor etc., of City of Paterson,* 73 NJ Eq 474, 69 A 225 (1908), illustrates that both rules of damages may be employed concurrently in the same jurisdiction—New Jersey courts assessing compensation at the time of taking in equity cases and at the time of trial in law actions.

Several other cases have taken the position that damages must be assessed at the time of condemnation, rather than at the time of the tortious entry. *Koerber v. City of New Orleans,* 228 La 903, 84 So2d 454 (1955); *Cheskov v. Port of Seattle,* 348 P2d 673 (Wash, 1960); *Anderson v. Port of Seattle,* 49 Wash2d 528, 304 P2d 705 (1956); *Tarrant County Water Control and Improvement Dist. No. 1 v. Fowler,* 175 SW2d 694 (Tex Civ App 1943) error refused, 142 Tex 375, 179 SW2d 250 (1944); *Williams v. Henderson County Levee Improvement Dist. No. 3,* 59 SW2d 93 (Comm App Tex 1933); *City of Mart v. Hasse,* 281 SW 318 (Tex Civ App 1926); *Nichols v. City of Cleveland,* 104 Ohio St 19, 135 NE 291 (1922).

Where the trespasser is a private corporation with the power of eminent domain, the great weight of authority requires damages to be assessed at the time of lawful condemnation. *Newgass v. Railway Company,* 54 Ark 140, 15 SW 188 (1891) ; *Lafayette, Muncie and Bloomington R.R. Co. v. Murdock,* 68 Ind 137 (1879) ; *Graham v. Connersville & New Castle Junction Ry Co.,* 36 Ind 463, 10 Am Rep 56 (1871) ; *New Orleans Ry & Light Co. v. Lavergne,* 138 La 949, 70 So 921 (1916) ; *Hampden Paint and Chemical Company v. Springfield, Athol and Northeastern Railroad Company,* 124 Mass 118 (1878) ; *Fish v. Chicago, St. Paul & Kansas City Ry. Co.,* 84 Minn 179, 87 NW 606 (1901) ; *Winona & St. Peter Railroad Company v. Denman,* 10 Minn 267 (Gil 208) (1865) ; *Board of County Com'rs of Blue Earth County v. St. Paul & Sioux City R. Co.,* 28 Minn 503, 11 NW 73 (1881) ; *Hynes v. Manhattan Ry. Co.,* 54 AD 256, 66 NYS 510 (1900) ; *Nantahala Power & Light Co. v. Sloan,* 227 NC 151, 41 SE2d 361 (1947) ; *Trimmer v. Pennsylvania, P. & B. R. Co.,* 55 NJL 46, 25 A 932 (1892) ; *Pittsburgh & W. R. Co. v. Perkins,* 49 Ohio St 326, 31 NE 350 (1892) ; *Graham v. Pittsburgh & L.E.R. Co.,* 145 Pa St. 504, 22 A 983 (1891) ; *Shevalier v. Postal Telegraph Company,* 22 Pa Super 506 (1903) ; *Faulk v. Missouri River & N.W. Ry Co.,* 28 SD 1, 132 NW 233 (1911) ; *Texas Western Ry. Co. v. Cave,* 80 Tex 137, 15 SW 786 (1891) ; *Richmond M. R. Co. v. Humphreys,* 90 Va 425, 18 SE 901 (1894) ; *Lyon v. Green Bay & Minnesota Railway Company,* 42 Wis 538 (1877) ; *Milwaukee & Mississippi Rail Road Co. v. Eble,* 4 Chand 72, 3 Pin 334 (Wis 1851) ; cf. *Otten v. Manhattan Ry Co.,* 2 AD 396, 37 NYS 982 (1896) ; *Routh v. Texas Traction Co.,* 148 SW 1152 (Tex Civ App 1912) ; *Beaumont & G. N. R. R. v. Elliott,* 148 SW 1125 (Tex Civ

App 1912). In so far as such cases are based upon reasoning that a state constitution demands payment before entry they are inapplicable here, since our constitutional provision exempts the state from the requirement made of other condemnors, that damages shall be assessed and tendered before the taking. Oregon Constitution, Art I, § 18. See *Distler v. Grays Harbor & P. S. Ry Co.*, 76 Wash 391, 136 P 364 (1913); *Crider v. Pittsburgh, Harmony, Butler & Newcastle Railway Company*, 54 Pa Super 587 (1913); *San Francisco and San Jose Railroad Company v. Mahoney*, 29 Cal 112 (1865); *Louisville, N. O. & T. Ry Co. v. Hopson*, 73 Miss 773, 19 So 718 (1896); *San Antonio & A. P. Ry Co. v. Ruby*, 80 Tex 172, 15 SW 1040 (1891).

On the other hand, there are several decisions which hold that even if the trespasser is a private corporation damages must be assessed at the time of the original entry. *Jones v. New Orleans and Selma Railroad Company and Immigration Association*, 70 Ala 227 (1881); *Cowan v. Southern Ry Co.*, 118 Ala 554, 23 So 754 (1898); *Memphis & Little Rock Railroad Company v. Organ*, 67 Ark 84, 55 SW 952 (1899); *Greeley, Salt Lake & Pacific Ry Co. v. Yount*, 7 Colo App 189, 42 P 1023 (1895); *Wabash, Salt Lake & Pacific Ry. Co. v. McDougal*, 118 Ill 229, 8 NE 678 (1886); *Indiana Central Railroad Company v. Hunter*, 8 Ind 74 (1856); *Daniels v. C., I. & N. R. Co.*, 41 Iowa 52 (1875); *Price v. Weehauken Ferry Co.*, 31 NJ Eq (4 Stew) 31 (1879); *Hosher v. Kansas City, St. Joseph & Council Bluffs Railroad Company*, 60 Mo 303 (1875).

Occasionally the evidence in a case indicates that the condemnor has entered upon the land with the knowledge or actual consent of the landowner. That has sometimes been used as a reason for fixing com-

pensation at the time of the entry. Thus, in *A. K. Roy, Inc. v. Board of Commissioners for Pontchartrain Levee District,* 117 So2d 60 (La 1960), where the condemnee had knowledge that his property was being taken but made no move to resist, the Louisiana supreme court refused to follow its earlier decision in *Koerber v. City of New Orleans,* supra, 228 La 903, 84 So2d 454 (1955), and fix the valuation date at the time of the condemnation, but instead restricted damages to the date of the actual taking. See also, *Yara Engineering Corporation v. City of Newark,* 136 NJ Eq 453, 42 A2d 632 (1945); *Wier v. St. Louis, Ft. S. & W. R. Co.,* 40 Kan 130, 19 P 316 (1888); *McElroy v. Kansas City & I. Air Line,* 172 Mo 546, 72 SW 913 (1903); *Oliver v. Pittsb. V. & C. Ry. Co.,* 131 Pa St 131 (1890). On the other hand, it has been held that regardless of the landowner's knowledge he is entitled to have damages fixed at the time of trial. *Chicago, M. & St. P. Ry. Co. v. Randolph Town-Site Co.,* 103 Mo 451, 15 SW 437 (1890) is the best opinion for this point of view. See also, *San Antonio & A. P. Ry. Co. v. Ruby,* 80 Tex 172, 15 SW 1040 (1891); *Driver v. The Western Union Railroad Company,* 32 Wis 569, 14 Am Rep 726 (1873); *San Antonio & A. P. Ry. Co. v. Hunnicutt,* 18 Tex Civ App 310, 44 SW 535 (1898); *Leeds v. Camden & A. R. Co.,* 53 NJL (24 Vroom) 229, 23 A 168 (1890).

These disagreements well illustrate that neither date for fixing damages has any compelling logic to commend it. In our judgment a better case can be made for assessing compensation at the date of entry rather than at the time of filing the condemnation petition. The strongest argument in favor of the latter date is a theoretical one: the fact that a landowner retains his fee interest in the property until

it is divested by judicial proceedings and hence there is no "taking" prior to that time in a legal sense. In a practical sense, however, the taking occurs at the time of the physical invasion, for the landowner is by this process ousted from any further use of his property except the right to claim a reasonable value for its occupation, and he can not enjoin or dispossess the condemnor if the latter is willing to perfect its right to the fee by a payment of compensation.

Forcing the state to pay the value of the land at the time of trial rather than at the time of the prior entry has no inherent deterrent effect. If land prices were subject to a law of increase only, one might reasonably contend that the state ought to be penalized for its negligence by obliging it to pay the higher value at the time of condemnation proceedings. But land values may fall as well as rise, with the result that in some cases it is the landowner rather than the trespasser who suffers the penalty. It is not always the condemnor who insists that value be fixed at the date of entry. See *City of Los Angeles v. Tower,* 90 Cal App2d 869, 204 P2d 395 (1949).

If, in a case such as this, "just compensation" were thought to require that the trespasser suffer some penalty and that the landowner be protected from possible loss through decrease in land values, the result could be accomplished by permitting the landowner to elect whether he will take the value at the time of the trespass or at the time of trial. This was the rule adopted by an early Mississippi decision, *Williams v. New Orleans, Mobile and Texas Railroad Company,* 60 Miss 689 (1882), but it has not found favor elsewhere, unless by implication in a Florida case, *Casa Loma Springs Development Co. v. Brevard Co.,* 93 Fla 601, 112 So 60 (1927). In our view, there

is no equity in forcing the state to pay the higher value in every case, for the landowner, by failing to assert his rights seasonably when the law gives him ample remedy, is hardly less at fault than the trespassor.

If damages are assessed at the time of the trespass, they are ascertained at a fixed rather than a shifting date. There will be no motive on either side to drag out negotiations in the hope of a favorable moment to demand condemnation; and settlement of claims rather than litigation will be encouraged. Moreover, problems of valuation are greatly simplified. This is not a case where the state has condemned lands for a public use, and at some later time condemns contiguous lands for a second public use. In that situation damages are the market value of the lands taken, as increased or diminished by the use already in existence. 1 Orgel, Valuation Under Eminent Domain (2d ed) § 104, p 443 et seq. Here, the land to be condemned was from the beginning an integral part of the proposed highway relocation, and we do not believe that the increase or decrease in area property values traceable to the highway itself could properly be taken into account in assessing compensation. *Parks v. The City of Boston,* 32 Mass 198 (1834); 1 Orgel, Valuation Under Eminent Domain (2d ed) Ch VIII, p 424 et seq. This being so, it would be a difficult task to appraise the property for condemnation purposes after the highway has been in existence for many years.

We note that fixing compensation at the date of the original entry denies the condemnee an opportunity to have the jury award a reasonable rental value of the premises for the period of unlawful occupation. As

a practical matter the state of affairs presented by this case is not likely to arise if the land taken has any real present value to the landowner. One who has suffered substantial loss will not suffer in silence. Moreover, legal interest on the award of damages, measured from the date of entry, has been widely accepted as a fair value for the use of the lands taken where the condemnor goes into possession before trial of the condemnation action. *State v. Deal,* supra, 191 Or 661, 233 P2d 242 (1951); *City of San Rafael v. Wood,* 301 P2d 421 (Cal App 1956); Annotation, 96 ALR 18 at 150 et seq.

The views we have set forth above follow the reasoning of those courts which adopt the rule that damages are to be assessed at the date of the trespass. Similar views are colorfully set out in the early opinions of Chief Justice Shaw and Chief Justice Brickell in *Parks v. The City of Boston,* supra, 32 Mass (15 Pick) 198 (1834) and *Jones v. New Orleans and Selma Railroad Company and Immigration Association,* 70 Ala 227 (1881). In the latter case the railroad was a trespasser and the landowner brought an action to have the property condemned, demanding that damages be ascertained as of the date of trial, and seeking to have the railroad's improvements included in the assessment. In rejecting these contentions, the court noted:

> "* * * Though the appellee was a trespasser, by reason of the neglect to pursue the proper remedy for acquiring the lands—acquiring them without the consent of the owner—there is in the right continuing in him to pursue the remedy, rendering the possession rightful, and by which title may be acquired, a plain distinction between the appellee and a common trespasser. * * *"

In holding that damages must be fixed at the date of entry, it stated:

> "* * * Just compensation for the land *at the time of its taking*, paid before or concurrently with its appropriation, was the right of the appellant. If there was an entry upon, and appropriation of the lands, without the consent of the owner, and without having the compensation ascertained, and making payment of it, there were remedies to which he could have resorted, protecting himself, regaining his possession, and compelling the ascertainment and payment of the compensation. If he is negligent —if he stands by in silence, suffering the wrongful entry, or continuance of possession under it, the construction of costly improvements, not necessary to the enjoyment of the freehold, inconvenient to his use and occupation, valuable to him only because he may dissever them, converting them again into personal property, and valuable only to the party making them for the uses to which they are dedicated—there is but little of equity in a claim that the measure of his compensation shall be increased by the value of improvements, or that the *time* at which such compensation is to be estimated shall be varied. * * *"

In *Parks v. The City of Boston,* supra, the city took the plaintiff's land when it broadened a street, and the plaintiff later brought an action for damages, contending that they should be fixed at the time of the trial. In holding that the date of entry controlled award of compensation, the court observed that:

> "* * * if a pie-powder court could be called on the instant and on the spot, the true rule of justice for the public would be, to pay the compensation with one hand whilst they apply the axe with the other; and this rule is departed from only because some time is necessary, by the forms of law, to conduct the inquiry * * *."

The court noted that the "public easement was defini-
tive, complete, and perpetual, on the day of taking"
and that fixing damages on this date provides a rule
that is:

> "* * * certain and practical, and tends to
> prevent litigation, being a rule which parties may
> apply for themselves, and which, in most cases,
> will be the nearest approximation to doing par-
> ticular justice. * * *"

In this case the State of Oregon is itself the con-
demnor. We, therefore, need not decide—other than
as the logic of this opinion compels a decision—whether
the rule of damages applied here would also apply
where the trespassor is a private corporation invested
with the power of eminent domain. And since the
record is barren of any evidence that the state acted
with a motive to oppress, or otherwise in bad faith,
we express no opinion whether a different rule of
damages should apply if such allegations were pleaded
and proved.

The circuit court correctly ruled that compensation
for the property condemned was to be ascertained at
the date of the actual entry by the state—October 1,
1946—with legal interest from that date until pay-
ment of the award.

The judgment is, therefore, affirmed.