# WILLIAMS *v.* STATE TAX COMMISSION

Roy Harland, Salem, submitted a brief for plaintiff.

A. W. Pedersen, Assistant Attorney General, Salem, submitted a brief for defendant.

Decision for plaintiff rendered April 24, 1963.

PETER M. GUNNAR, Judge.

This is a suit to set aside Opinion and Order No. VL 62-129, which sustained the assessed value placed by the Polk County Assessor upon plaintiffs' lands in Polk County, Oregon, for the tax year 1961-62.

## FACTS

Plaintiffs are the owners of three tracts of land, totaling in excess of 260 acres, situated in Polk County approximately three miles westerly from the City of Salem on Orchard Heights Road. A part of the subject property along Orchard Heights Road has been platted for sale.

During the initial reappraisal, the assessor classified this land as subdivision land and valued it at $106,490.90, including improvements valued at $10,450. There is no controversy concerning the improvement values. The plaintiffs contend that all the land, other than the small platted partition, should be valued as farm or agricultural land and contend for a value, including platted land and improvements, of $44,252.

The evidence indicates that this large tract was not served by paved, public roads to any great extent, contained some acreage unsuited for farming or subdividing, was some distance from the present subdivision activity, had a view potential in part, and had water available. The platted portion contains about 25 building sites.

## ISSUES

The contentions of the plaintiffs are:

a. That the present, agricultural use should determine the use for which the unplatted portion should be valued, rather than it being valued as subdivision property. As stated in their opening brief, "[T]he [actual] use determines the class thereof."

b. That, in any event, the value of the property does not exceed $44,252.

### Highest and Best Use

The issue presented by the plaintiffs' first contention is whether land may be valued at its highest and best use for tax purposes or must be valued at its present use only. Although it is assumed in the Oregon opinions that the highest and best use controls, the defendant failed to file a brief or to cite any authority in support of this principle, which appears to be of first impression.

■ The entire concept of value presupposes the theory of highest and best use. If a seller offers property for sale, he expects to get its value based upon its inherent qualities in the light of its situation. If a person owned a block in the center of Manhattan upon which he grew radishes and then offered it for sale,

he would expect to receive more than farm acreage prices for it. The fact that he was farming it would be immaterial. Similarly, a farmer whose land is being surrounded by subdivisions can expect to sell his farm for higher than farm prices. He can expect to sell it for a price justified by that reasonable use which will realize, in the present or the immediate future, the highest return on the investment, the so-called highest and best use.

■ This principle is recognized universally in ad valorem tax valuation. 51 Am Jur 656, Taxation § 706; 84 CJS 795, Taxation § 411 (2)(a). In Oregon, it has been approved in the valuation of real property in eminent domain proceedings. *State Highway Com. v. Stumbo,* 222 Or 62, 65-6, 352 P2d 477 (1960), and the cases cited therein. Valuation decisions in eminent domain generally have a direct applicability in ad valorem tax cases. See *Georgia-Pacific Corp. v. State Tax Com.,* 228 Or 112, 117, 363 P2d 1104 (1961), citing *State Highway Comm. v. Superbilt Mfg. Co.,* 204 Or 393, 281 P2d 707 (1955).

 The plaintiffs' argument is that the constitution requires uniformity of taxation within the same class of property and that a property's use determines its class. In this, the plaintiff is in error. A property's intrinsic and extrinsic qualities determines its class. If this were not so, the hypothetical radish grower on Manhattan could avoid his fair taxation and farming would become the universal occupation of land speculators. What ad valorem taxation under our constitution seeks to accomplish generally is the taxation of all taxable property uniformly in relation to its market value. The reference to class adverts to legislative classification. Where there is no legislative classifi-

cation, the character and qualities of the property, including its utility, determines its class. In 1961-62, there was no separate, legislative classification of farm lands.

## Speculative Value

The valuation of property at its highest and best use does not permit speculative uses to be considered. If the property is to be valued at a use other than its present use, the use must be one to which it is available and adapted presently or within a future time so immediate that the proposed use is an element of its present value. *State Highway Com'n v. Deal,* 191 Or 661, 671-2, 233 P2d 242 (1951). This corollary raises an issue of fact in each case in which the highest and best use concept is applied; and, as will be seen, this case is no exception.

## Presumption Rebutted

The value determined by the assessor is presumed correct. *Strawn v. Commission,* 1 OTR 98, 149 (1962). This rebuttable presumption can be overcome by a preponderance of the evidence showing that the assessor's value is incorrect.

## Analysis of Evidence

The evidence supporting the assessor is ably compiled and presented. In addition to the evidentiary presumption, the defendant's witness testified that the assessor's valuation was the result of determining the acreage value of the land just beyond the perimeter of West Salem and extending a few miles to the west, and of applying to this value a percentage factor which, in the judgment of the appraiser, accounted for

the various defects of the subject property which reduced it below the average value.

On the other hand, the plaintiffs, in addition to the plaintiff Mr. Williams, whose self-serving testimony was so partisanly unreasonable as to present a jaundiced view, elicited the opinion of a respected professional appraiser, Peter Geiser, of Salem. The professional appraiser did not support the valuation sought by the plaintiffs, but gave his opinion that the property had a fair market value of $78,000.

Unlike its predecessors, whose scope of review of ad valorem property tax valuations was severely limited, it is the function of this specialized and expert court, upon such suit as this, to determine the proper assessed value of the property in dispute. *Strawn v. Commission, supra.* It must determine, from the preponderance of the evidence presented to it *de novo,* the true and correct assessed value for the property.

It is shown by the evidence, as well as the personal knowledge of the court, that the area in which the subject property lies is in a state of transition. Clearly, from the testimony of all witnesses, the soil in the area is poor. Farm land in that area would bring only $150 an acre. The highest and best use, as found by both the state appraiser and plaintiffs' professional appraiser, is as subdivision property. Yet it is three miles or so from the nearest, active subdivision. The tract is poorly served by roads and utilities. It is larger than most current subdivisions in the area. To classify this land as subdivision property borders upon the speculative.

Obviously, a feature in so classifying it is its lack of value as farm land. Because its farm value is so

low, the value of the property contains a present element of value as an investment for future, not present, subdivision. In other words, but for the lack of value as farm land, the classification of this land as subdivision would be too speculative under the rule discussed above.

The problem presented by this property is one ever present in transitional areas. There is always the question of what weight to give to the speculative future in determining, not future value, but present value. In attempting to solve this problem, the commission has used one approach and the taxpayers' appraiser another. The commission has taken an over-all average and sought to adjust it subjectively. In this average it has included many properties certain to be subdivided, as well as other properties of a more speculative nature. Except in the subjective adjustment for various factors, reflected in the defendant's percentage reductions, the commission has included, without selective treatment, land purchases which include blockage, utility, and other value factors which do not apply to the subject property in the same or similar degree.

Geiser, on the other hand, has restricted his considerations to properties close to the subject property. The commission did not consider these sales for reasons which are not altogether supported by the record.

These two appraisals define the distinct difference in approach. The commission appraisal tends to assume the certainty of future subdivision of the subject property and attempts to adjust its value to arrive at a present value for this purpose. The Geiser appraisal, while it recognizes the same highest and best use, appears to recognize also the present, specu-

lative nature of this use and the speculative affect of subdivision potential on the present value. For this apparent reason he restricts his comparables to properties in the close vicinity of the subject property. Thereby these comparables tend to reflect the actual effect of such future, possible, even perhaps probable, but not certain, potential upon the present value of properties in like situation.

■ It is the opinion of this court that the latter method is the more sound. This court recognizes the difficulty of the problem posed by property like the subject property in an area in transition. Because the area is in transition and any reflection of the highest and best use as subdivision property borders on the speculative, it is the opinion of this court that the greater weight should be given to comparables in close proximity to the subject property, thereby limiting and controlling speculative assumptions, as directed by the foregoing authorities, and relying upon the same element of speculation in the appraisal as actually exists in the area. The use of an average of a large area in much of which the subdivision usage or utility is no longer speculative at all but rather is a factual certainty tends to distort value in this situation where successful subdivision is speculative, though thoroughly possible, and where such uncertainty is most likely to be reflected by a substantial off-set in present value.

For the foregoing reasons, the court finds the value of the subject property to be accurately reflected in the Geiser appraisal and that the subject property on January 1, 1961, had a fair market value of $78,000, including therein a value of $10,450 for the improvements. With the posted and adopted ratio of 25 per

cent applicable in Polk County for the tax year 1961-62, the assessed value of the property is one quarter of its market value.

A decree will be prepared in accordance with this opinion pursuant to rule 32 of this court, and costs shall be recovered by the plaintiffs.