## PACIFIC COAST LAND CO. *v.*
## DEPARTMENT OF REVENUE

L. Eugene Crampton, Attorney at Law, Lake Oswego, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered February 19, 1971.

LOREN D. HICKS, Judge Pro Tempore.

This case concerns the fair market value on January 1, 1968, of four parcels of plaintiff's land lying along the ocean beach and U.S. Highway 101 in Lincoln County south of the town of Newport. The

properties are identified in the evidence by tax lot number and are valued by the parties as follows:

| Tax Lot Number | Acres | | Plaintiff's Contention | Defendant's Contention |
|---|---|---|---|---|
| 14 | 65 | mostly east of highway | $13,890 | $ 52,760 |
| 15 | 23 | west of highway along beach | 28,740 | 103,280 |
| 32-148 | 29.27 | west of highway | 21,630 | 86,320 |
| 32-182 | 26.58 | both west and east of highway | 18,166 | 47,720 |
| Totals | 144.85 | | $82,426 | $290,080 |

Plaintiff corporation asks for reduction of the total assessment to $82,426 which was the assessed value of the property on January 1, 1967. The new value contended for by the defendant represents an increase of more than 350 percent. At the outset of the case, of course, the assessment is presumed to be correct, and the plaintiff has the burden of proof by a preponderance of the evidence of its allegation of an absence of basis for the assessor's higher values; *Sproul v. Commission*, 1 OTR 31, 47-52, *rev'd on other grounds*, 234 Or 567, 382 P2d 99 (1963); *Williams v. Commission*, 1 OTR 265, 269 (1963); ORS 305.427.

A point raised during the trial was the competency of testimony of an expert witness called by the defendant on the question of the true cash value of the properties on January 1, 1968. The witness had not viewed the property until a few days before the trial which was almost three years after the date of assessment. According to the evidence there was no substantial change to the property during the intervening three years. The court, at the time the evidence was

offered, ruled it incompetent, whereupon it was received under "the rule." ORS 17.045. Upon reflection and further argument by both sides, it is the court's opinion that the evidence of the appraisal was competent and should have been received. Therefore, it will be considered in this decision. It was the only evidence supporting the assessor's values.

The evidence showed that the property is unimproved land about one-half of which lies between the ocean beach and the west side of Highway 101 and for the most part is open and level. The portion of the property east of the road is generally rough, brushy and heavily wooded, and much of it has poor drainage causing it to be wet the year around. The land on the east is of less value than that to the west. The most valuable portion of the property is along the beach front.

Mr. A. D. Dority, the only witness for plaintiff, is president of the plaintiff corporation and is in the real estate and farming business, and obviously has a special interest in the outcome of the case. He expressed an opinion that the property should be appraised as acreage because it is a large unplatted tract of bare land without roads or utilities. He said plaintiff bought it as acreage and it was for sale as acreage. Mr. Dority testified that in a 1965 condemnation case involving 90 acres of plaintiff's adjoining property west of the highway, which was similar to the beachfront land in this case, a negotiated settlement had resulted in a land price of $1,111 an acre. He testified that such an amount was a fair 1968 value for most of plaintiff's present land lying west of the highway. Mr. Dority was of the opinion that the assessor's office originally had relied on this forced sale in arriving at its appraisal of January 1968, and that the great

increase in assessment was due to a mistake in per acre calculations by the assessor's office. The evidence was insufficient to substantiate these theories. Mr. Dority valued much of the land on the east side of the highway at only $100 an acre. He considered the highway frontage property to be unsuitable for business purposes. He summarized his testimony by agreeing with the assessed value for 1967 of $82,426, and stating that there was no change in value between the time of that assessment and January 1, 1968.

Mr. Harry Ross Miller, Assessor for Lincoln County at the time of trial, who had been Chief Appraiser for the county on January 1, 1968, was called by defendant and testified that for county appraisal purposes plaintiff's land had been classified into a dozen or so tracts each of which was valued separately —several by front footage on the beach and highway and others by acreage. Frontage values were set at $14, $21, and $60 a foot and acreage values varied from about $500 to $4,800 an acre. Mr. Miller also testified that the appraised values were reduced by a 40 percent "incentive allowance" which he said was given by his office in some cases to encourage owners to hold and develop their properties. However, the assessor could not explain the basis or method used for the county appraisal or the "incentive allowance," nor did he know how his appraiser arrived at the per acre value or what, if any, comparables were used. The appraiser who had made the original appraisal, presumably in late 1967, was unavailable at trial, having left the assessor's office in mid-1968. There was no competent evidence as to the method used in his appraisal or the basis of his estimate of value. Mr. Miller said he knew of no similar acreage sites available in the area.

The defendant's other witness, Mr. H. V. Waller, Deputy Lincoln County Assessor, who was formerly in the real estate sales and land appraising businesses, appraised the property a few days before trial. He set the value, after subtracting an incentive allowance, at $360,280. However, in adding together the individual elements of his testimony, the court is unable to arrive at any such amount, but instead finds various possible total amounts. There was confusion in the testimony about the number of acres involved, the assignment of values and the application of "incentive allowances" to the different acreages. The court's computations show total values ranging from about $234,500 to about $279,000. This uncertainty adversely affects the weight given Mr. Waller's testimony. His appraisal was remote in time after the assessment date (with no explanation as to why a second appraisal wasn't accomplished earlier), and his testimony showed that he was to some extent influenced by events and increases in values subsequent to January 1, 1968. His comparables were significantly different from each other and from the subject property. Two of his three sales were not verified. Also, Mr. Waller admitted that he was not particularly familiar with the area in January 1968, and that it is difficult to appraise a piece of real estate as of a date three years prior in time. Mr. Waller's comparable sales were also more than three years old and significant improvements had been made to the properties in the meantime. Furthermore, Mr. Waller's evidence was secured and offered at the last moment in an attempt to justify a three-year old appraisal. For these reasons the court gives little weight to his evidence.

 For the tax year 1968-69, the assessor set the

true cash value of plaintiff's land at more than three and one-half times over the year before. Such a substantial increase in assessed value must be supported by convincing evidence that there was actually such an increase in value or that the increase was justified by a change in the highest and best use of the property or that the former appraisal was gross error. There was no evidence of any of these. A taxpayer is entitled to prior notice of an increase in assessed valuation. It is the opinion of the court that the assessor must be able to clearly demonstrate that an increase was justifiable and supportable at the time of such notice, rather than only by later evidence bolstered by the benefit of hindsight.

The court finds that the plaintiff met its burden of proof that the assessment as of January 1, 1968, was in error. The court further finds that defendant's efforts to go forward with the evidence to substantiate the assessment were not convincing and did not overcome plaintiff's evidence. The court, therefore, is obliged to find the true cash value of the land in question. *Williams v. Commission, supra,* 270. The most satisfactory evidence in the case on that question is the assessment of the year before. Although there was no direct evidence of the assessor's basis for the 1967 assessment figure, plaintiff's evidence supported that valuation and both parties had accepted it for 1967. The court finds that the land was worth at least that much in January 1968. Any attempt by the court to increase the amount to some higher figure would be pure conjecture. Therefore, from the proof made at trial, the true cash value of plaintiff's property for purposes of assessment on January 1, 1968, is set at $82,426.