The People of the State of New York ex rel. George Kemp Real Estate Company, Appellant, v. Frank A. O'Donnel et al., as Commissioners of Taxes and Assessments of the City of New York, Respondents.

Tax — under the Greater New York charter (§ 896) the assessed valuation of real estate cannot be increased, after books are opened for review, without notice to the owner — rights of taxpayers in proceedings for the review of assessments.

Section 896 of the charter of the city of New York (L. 1901, ch. 466) which provides that the board of taxes and assessments shall not increase the assessed valuations after the books of annual record are opened for correction and review, except upon notice to the party affected thereby, implies that the taxpayer may rely upon the proposition that his assessment will not be augmented in any respect without his knowledge and an opportunity to object.

There is nothing in the action of the taxpayer in seeking a review of his assessment by certiorari which implies his consent to have the assessment increased, nor can the action of the commissioners of taxes and assessments in resisting his application for a reduction be construed into a notice from them that they will ask for an increase. Hence, there cannot properly be a finding by the court to that effect.

Although it may be determined in certiorari proceedings that the valuation of real estate in the column in the annual record of assessed valuations, showing the value of the property if improved, is too high and is, therefore, reduced, an increase in the column showing valuation of the property, if unimproved, is unauthorized.

People ex rel. Kemp Real Estate Co. v. O'Donnel, 133 App. Div. 894, modified.

(Argued February 8, 1910; decided March 4, 1910.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 25, 1909, which affirmed an order of Special Term directing a reduction of the assessment of relator's real property for purposes of taxation for the year 1904.

The facts so far as material are stated in the opinion.

*John Larkin* for appellant.   The court below was without jurisdiction to increase the land valuation of the tax commissioners, and was bound by it in fixing the total valuation of the property. (*People ex rel. B. B. P. Assn.* v. *Stillwell*, 190 N. Y. 284; *People ex rel. Keim* v. *Desmond*, 186 N. Y. 232; *People ex rel. Village of Brockport* v. *Sutphin*, 166 N. Y. 163; *People ex rel. Bhumgara* v. *Wells*, 93 App. Div. 212; 179 N. Y. 529; *People ex rel. Kellogg* v. *Wells*, 182 N. Y. 314; *Van Deventer* v. *Long Island City*, 139 N. Y. 137; *Matter of Babcock*, 115 N. Y. 450.)

*Archibald R. Watson, Corporation Counsel* (*William H. King* and *Curtis A. Peters* of counsel), for respondents. The assessments of lots 1 and 69 were properly treated by the Special Term and the Appellate Division as valuations of the lots in their entirety, without regard to the division of valuation as between land and land with improvements contained in the annual record of assessed valuations, but not in the assessment roll. (*People ex rel. U. V. C. Co.* v. *Feitner*, 54 App. Div. 217; *People ex rel. E. M. Co.* v. *Feitner*, 60 App. Div. 282; *People ex rel. M. R. R. Co.* v. *Barker*, 146 N. Y. 304; *People ex rel. Lazarus* v. *Feitner*, 65 App. Div. 318.)

Willard Bartlett, J.   This is a certiorari proceeding under the provisions of the Greater New York charter (Laws of 1901, ch. 466, § 906) and the Tax Law (Laws of 1896, ch. 908, § 253 *et seq.*) to review five separate assessments for taxation for the year 1904 upon real property belonging to the relator in the city of New York.   This property consists of five lots on the east side of Fifth avenue between 49th and

**50**   People ex rel. Kemp R. E. Co. *v.* O'Donnel.   [Mar.,

Opinion of the Court, per Willard Bartlett, J.   [Vol. 198.

50th streets, as follows: Lot 1, known as the Belgravia apartment house; lot 2, No. 613 Fifth avenue, a private dwelling; lot 3, No. 615 Fifth avenue, an apartment house; lot 69, the Buckingham Hotel; and lot 64½, a vacant lot used in connection with the hotel.

The only assessments which it is necessary to consider in disposing of this appeal are those on lots 1 and 69.

In the annual record of the assessed valuation of real and personal estate of the borough of Manhattan for 1904, it appeared that these lots had been assessed by the deputy tax commissioners, under the direction of the board of taxes and assessments, as follows: Lot 1. Value of real estate unimproved, $400,000; value of real estate with improvements thereon, $500,000.   Lot 69. Value of real estate unimproved, $1,050,000; value of real estate with improvements thereon, $1,600,000.

Before the referee who took the testimony in the certiorari proceeding it was stipulated that the assessed value of real property in the city of New York for the year 1904 for purposes of taxation was only 88 per cent of the actual value of such property.

As to lot 1 the referee found that the value of the land unimproved was $475,000 (as against the assessed valuation of $400,000) and that the improvements added $90,000 to its value (while according to the annual record of assessed valuation they added $100,000).   He held, however, that the board of taxes and assessments was bound by the valuation of the land unimproved at $400,000, and accordingly reported that the correct valuation of the property should be made up by adding to that sum 88 per cent of the value of the improvements as found by him, to wit, $79,200, making a total of $479,200.

As to lot 69 he found that the value of the land unimproved was $1,350,000 (as against the assessed valuation of $1,050,000) and that the improvements added $275,000 to its value (while according to the annual record of assessed valuation they added $550,000).   In reference to this lot, the referee like-

wise held that the board of taxes and assessments was bound by the valuation of the land unimproved at the assessed figure of $1,050,000; and, therefore, he reported that to this should be added 88 per cent of the value of the improvements as found by him, which would be $242,000, giving a total of $1,292,000 as the correct valuation of lot 69.

The learned court at Special Term refused to adopt the referee's conclusions of law to the affect that the assessed valuations as set forth in the annual record could not be increased in this proceeding and modified his report so as to direct the reduction to 88 per cent, to be calculated upon the total actual value of each parcel as he found it to be, notwithstanding the fact this method involved an increase above the assessment of the land considered as unimproved. It is of this modification that the relator complains upon the present appeal.

It is quite clear that the board of taxes and assessments itself could not increase the assessed valuations of these parcels without notice to the relator after the books of annual record had been opened for correction and review. The charter expressly prohibits the board from so doing. (Laws of 1901, ch. 466, amending § 896.) While it permits a tentative increase by the board, it carefully provides that the taxpayer shall be notified thereof. " Inasmuch, however, as the taxpayer may examine the books before such increase is made and being satisfied ·ith the valuation go his way without making complaint, the legislature provided that the tentative increase should not become permanent without a notice of at least ten days." (VANN, J., in *People ex rel. Simpson* v. *Wells*, 181 N. Y. 252, 256.)

The relator now insists that the court, upon a review by certiorari, was equally without power to increase the valuations, at least without a notice of some character from the taxing authorities to the taxpayer that it would be asked to do so. In this view we concur.

There is a radical difference between the method provided for the correction of assessments of real and personal property

52    People ex rel. Kemp R. E. Co. *v.* O'Donnel.    [Mar.,

Opinion of the Court, per Willard Bartlett, J.    [Vol. 198.

by the Tax Law applicable throughout the state generally and that applicable to New York city alone provided for by the Greater New York charter.   As was said by Edward T. Bartlett, J., in *People ex rel. Thomson* v. *Feitner* (168 N. Y. 441), "the scheme of assessment and taxation provided for the city of New York has no similarity to the general law applicable to the other portions of the state."   (p. 449.)

Under the general Tax Law the valuations are fixed provisionally upon an assessment roll which is open for inspection by the taxpayers during a prescribed period and upon which the valuations may be corrected.   In the city of New York, however, the annual record of assessed valuation takes the place of the assessment rolls in other parts of the state, so far as notice to the taxpayers and the opportunity to demand a correction are concerned.   The annual record of assessed valuation required to be kept by section 892 of the charter must specify the value of real estate in two columns.   In the first column must be set forth the sum for which the parcel would sell if wholly unimproved, and in the second column the sum for which the parcel would sell with the improvements thereon.   (Greater New York Charter, § 892, as amended by Laws of 1903, ch. 454.)   These appear to be the only assessments which the owner of land in New York city has an opportunity to inspect and have corrected.   No such opportunity is afforded to him after these books are closed and the valuations are placed upon the assessment rolls for the several boroughs to be delivered to the board of aldermen. When the charter says, in section 896, that the board of taxes and assessments shall not increase the valuations after the books of annual record are opened for correction and review, except upon notice to the individual or corporation affected by the increase, it clearly implies that the taxpayer may rely with confidence upon the proposition that his assessment will not be augmented in any respect without his knowledge and an opportunity to object.   When he takes the assessment into court, asking for a reduction thereof, there is nothing in his action which implies a consent to have the assess-

ment increased or a willingness to litigate that question, nor can the action of the commissioners of taxes and assessments in resisting his application for a reduction reasonably be construed into a notice from them that they will ask for an increase. The petition in the certiorari proceeding alleges that the assessed valuations are erroneous by reason of overvaluation and inequality. The return avers the correctness of the assessments. The petition and return in a case of this kind perform the office of pleadings in an action (*People ex rel. Buffalo Burial Park Association* v. *Stilwell*, 190 N. Y. 284); and they presented no issue involving the proposition that the assessed valuations as made were too small. Hence, there could not properly be a finding by the court to that effect.

We think that the referee adopted the correct view of the law in dealing with the assessments upon the relator's lots 1 and 69. The order of the Appellate Division and that of the Special Term should be modified so as to adjudge that the correct valuation of lot 1 for the purpose of taxation for the year 1904 is $479,200, and that the correct valuation of lot 69 for the purpose of taxation for the same year is $1,292,000, and so as to direct that the necessary corrections be made on the record of assessed valuations and other tax books of the city of New York for said year; and as thus modified, the orders should be affirmed, with costs to the appellant in both courts.

CULLEN, Ch. J., HAIGHT, VANN, WERNER, HISCOCK and CHASE, JJ., concur.

Ordered accordingly.