# OREGON BROADCASTING COMPANY
## *v.*
# DEPARTMENT OF REVENUE

Carl M. Brophy and Douglass H. Schmor, Brophy, Wilson & Duhaime, Medford, represented plaintiff.

James D. Manary, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered March 20, 1978.

CARLISLE B. ROBERTS, Judge.

The plaintiff appealed from the Department of Revenue's Order No. VL 77-190, dated March 24, 1977, pertaining to the true cash value of approximately 7.95 acres of improved real property (Jackson County Assessor's Account No. 1-38480-4, Map 372W13DD-500, Code 49-1), for purposes of taxation, as of the assessment date of January 1, 1976.

The plaintiff is a California corporation, duly licensed and qualified to do business in Oregon, operating a broadcast television studio which is particularly designed for the transmission and reception of microwave signals.

The subject property has a westerly boundary consisting of 500 feet of frontage on Crater Lake Highway (Highway 62) (one-quarter of a mile from its intersection with Interstate Highway 5) and an easterly boundary of similar length formed by Bear Creek, flowing at this point parallel and adjacent to Highway I-5. The north and south boundaries are parallel lines. The Jackson County Assessor divided the plaintiff's property into three separate parcels for purposes of determining its highest and best use and true cash value, as follows: (1) approximately 2.3 acres of unimproved land with a depth from the street of 200 feet, fronting on Crater Lake Highway, zoned C-7 (freeway service commercial), which was assessed at a value of $.75 per square foot, or $75,000; (2) approximately 4.9 acres containing all of plaintiff's improvements (a broadcast television studio, the administrative offices, and specialized microwave transmitting and receiving facilities), zoned C-5 (thoroughfare commercial),

assessed for tax purposes at $.092 per square foot, a total of $19,600; and (3) approximately .75 acre consisting of a channel easement for Bear Creek, valued by the assessor at $500. These values were substantially supported by the written appraisal report of the county assessor's appraiser.

In addition to the total of $95,100 for the land only, a value of $111,820 was placed upon the improvements by the assessor's office, for a total of $206,920. The value of the improvements was accepted by the plaintiff but it appealed the land value to the county board of equalization and obtained a reduction of the assessed value thereof to $77,550. The county assessor then appealed from the board's reduction to the defendant, pursuant to ORS 306.515 (1975 Replacement Part), and the defendant, in its Order No. VL 77-190, restored the original assessed value. Plaintiff appealed from the defendant's order to this court, pursuant to ORS 306.545 (1975 Replacement Part), pleading that the land should be assessed at a value between $31,863.20 and not more than $65,300.

The thrust of the plaintiff's argument is that the highest and best use of the plaintiff's land is the present use and that the true cash value must be based on that fact. Plaintiff's witnesses testified that plaintiff had had two years of experience in the Medford area, operating at another location before purchasing the subject property in 1954 for the express purpose of a television station site. The subject property met the plaintiff's standards with regard to technical requirements (a part of which is based upon the fact that microwaves follow the line of sight and there can be no intervening natural or man-made objects between the transmitter and receiver without a partial or complete loss of the wave), indoor and outdoor studio requirements, and "commercial appeal" (easy access, image, and recognition). The improvements were built away from the highway to reduce outside noise. The plaintiff had tried to obtain a location with natural barriers to prevent encroachment of audible and electronic

[ 381 ]

sound waves. Over a period of 22 years of operation, it has found the site to be very satisfactory (although there is now some nuisance through encroachment by citizen band radio).

Plaintiff's testimony admitted that the 2.3 acres of unimproved land fronting on Crater Lake Highway, with a depth of 200 feet, was and is the subject of inquiry and of offers to purchase from developers of motels, service stations and shopping centers. All offers are refused because of the potential loss of the amenities and uses of the property for television operation, as above described.

Plaintiff's sole expert witness on property valuation, a property appraiser of substantial experience, admitted that the city's zoning allowed the developments contemplated in the occasional offers to purchase and that the values ascribed to the various parcels by the county assessor constituted a fair price if the subject land was sold for the zoned uses, being fully supported by comparable sales. Then follows a paradox or a contradiction: Plaintiff contends that the highest and best use of the property is its present use but its value in such use, although indefinite, must be substantially lower than the value that would be obtained through other uses contemplated by the zoning.

■■■■ "Highest and best use" is "[t]hat reasonable and probable use that will support the highest present value, as defined, as of the effective date of the appraisal." The American Institute of Real Estate Appraisers and the Society of Real Estate Appraisers, *Real Estate Appraisal Terminology* 107 (B. Boyce ed 1975). Of course, this definition has several secondary requirements (*e.g.,* the use must be a "legal use") but, for the purposes of this suit, note must be taken of the reason why all property must be assessed at its highest and best use. As stated by Ring, *The Valuation of Real Estate* 32 (2d ed 1970):

"The passive nature of land, which causes its income to be residual, makes it of prime inportance that land be employed under its *highest and best possible use.* Only under such use can land attain its maximum return of income and hence its maximum value.

"Highest and best use is logically defined as 'that possible and legal use or employment which will preserve the utility [usefulness] of the land and yield a net income flow that forms, when capitalized at the proper market rate of interest, the highest present value of the land.'* * *"

The county assessor must look to that use which is legal, probable, and in demand, the use which returns to the land the highest net return, in order that the revenue may not be diminished by the vagaries, indifference, or lack of expertise of a particular landholder. The owner is not required to devote the land to its highest and best use, but he cannot expect other taxpayers to assume a greater tax burden because of his failure in this respect. "[A]n owner cannot claim that because the value of his use has not kept pace with the increase in land value, he should be treated differently than those who make full economic use of their property." (*Bazar, Inc. v. Dept. of Revenue,* 266 Or 177, 186, 511 P2d 1226, 1230 (1973).)

█ The argument of the plaintiff that the present use of the subject property is its highest and best must be respected. The present use apparently does not constitute a variance of the zoning requirements. However, the reasons advanced by the plaintiff why its present use results in a lower value to the land than that obtainable through the highest and best use asserted by the county assessor (*i.e.,* other uses contemplated by the zoning ordinances) are untenable. These reasons appear to be based upon a contemplation of condemnation where the plaintiff is required involuntarily to give up the property, subjecting plaintiff to serious expenses and losses; *e.g.,* the cost of finding a new site; or, if the plaintiff were compelled to sell its C-7 parcel (retaining the rest), the cost to

construct a 100-foot tower in order to continue operation. Plaintiff's appraisal witness testified that a sale of the C-7 acreage would "damage" the improvements to such an extent that the plaintiff couldn't afford to move. Yet the witness accepts the value of the improvements and insists on diminishing the value of the land to absorb this alleged loss.

All of the costs to which plaintiff adverts are based upon its ease in carrying on its business in the future and are of no interest to the "market." The plaintiff is not subject to a threat of condemnation and is in no danger of losing its property. Each of its arguments for basing "highest and best use" upon present use redound to the value of the property in the market. It must be concluded that the value of the property presently to the plaintiff is at least as great as that asserted by the county assessor for other uses. The vast amount of plaintiff's testimony respecting technical matters has no relation to the market to which the parties must go to ascertain value.

The Order No. VL 77-190 of the Department of Revenue is affirmed but amended to show the value of the land to be $107,520 as of January 1, 1976 (the preponderance of the evidence of value having been submitted by the state's expert witness and supported by Defendant's Exhibit A. ORS 305.435 (1977 Replacement Part)). The Jackson County Assessor and Tax Collector shall amend the assessment and tax rolls for the tax year 1976-1977 in accordance with this decision.

Defendant is entitled to its statutory costs and disbursements.