IN THE OREGON TAX COURT

MID OIL COMPANY
*v.*
DEPARTMENT OF REVENUE
(TC 1607)

James H. Conley, Salem, represented plaintiff.

382

G. F. Bartz, Assistant Attorney General, Justice Department, Salem, represented defendant.

Decision part for plaintiff, part for defendant rendered February 13, 1984.

**SAMUEL B. STEWART, Judge.**

Plaintiff owns five service station properties in Lane County. As of January 1, 1979, the Lane County Assessor substantially increased the assessed values of four of those properties over 1978 values, as indicated in Chart 1.

CHART 1

| Account Number | Assessor 1978 | Assessor 1979 | Board of Equalization 1979 |
|---|---|---|---|
| 44816 | No data given | | $ 45,550 |
| 280139 | $ 88,770 | $117,480 | 136,180 |
| 437358 | 66,670 | 81,930 | 76,320 |
| 461630 | 96,360 | 130,980 | 112,080 |
| 630283 | 132,030 | 159,770 | 154,250 |

Plaintiff appealed to the Lane County Board of Equalization. The board reduced the value of the improvements on one property by $18,900 and increased the value of the improvements on another property by $18,700 and reduced the improvements on two other properties by approximately $6,000 each. See Chart 1. Plaintiff appealed to the defendant from the values determined by the board of equalization.

The defendant, in every case, increased the assessments by increasing substantially the value of the land involved. It did so on the basis that plaintiff, who had testified through Mr. John C. Carlson, had not borne the burden of proof by virtue of having failed to perform in a professional manner. (Defendant's Opinion and Order No. VL 81-805 at 11-12.) Plaintiff appealed to this court wherein its principal appraisal witness was again Mr. John C. Carlson. Defendant, however, utilized a different appraisal witness, Mr. Joe D. Rose, Commercial Appraiser, Lane County, as opposed to Ms. Pearl Dotson, Commercial-Industrial Appraiser, Lane County. Both Messrs. Carlson and Rose changed values from

those that had been alleged before, as is indicated in Chart 2, although Mr. Carlson far less so than Mr. Rose.

Chart 2

| | | Mr. Carlson | | Mr. Rose | |
| | | Before Defendant | Before Tax Court | Ms. Dotson & Defendant's Value | Before Tax Court |
|---|---|---|---|---|---|
| 44816 | Land | $10,500 | $11,730 | $ 28,600 | $ 37,640 |
| | Imp. | 15,000 | 14,000 | 32,550 | 11,330 |
| | Total | $25,500 | $25,730 | $ 61,150 | $ 48,970 |
| 280139 | Land | $92,000 | $92,500 | $133,600 | $161,990 |
| | Imp. | 7,500 | 2,500 | 17,720 | 10,860 |
| | Total | $99,500 | $95,000 | $151,320 | $172,850 |
| 437358 | Land | $35,000 | $38,890 | $ 43,750 | $ 70,170 |
| | Imp. | 10,500 | 12,000 | 23,760 | 14,180 |
| | Total | $45,500 | $50,890 | $ 67,510 | $ 84,350 |
| 461630 | Land | $39,700 | $61,600 | $ 70,080 | $180,770 |
| | Imp. | 19,500 | 33,000 | 41,200 | 38,780 |
| | Total | $59,200 | $94,600 | $111,280 | $219,550 |
| 630283 | Land | $85,000 | $83,800 | $129,210 | $120,330 |
| | Imp. | 12,500 | 15,000 | 29,960 | 22,310 |
| | Total | $97,500 | $98,800 | $156,170 | $142,640 |
| GRAND TOTAL | | | | $547,430 | $668,360 |

## VALIDITY OF INCREASING
## VALUES ON APPEAL TO TAX COURT

As is clear from Charts 1 and 2, each time plaintiff appealed, the Lane County Assessor's Office increased its previous determination of true cash value. Such conduct cannot help but have a chilling effect upon the ardor of a plaintiff considering contesting his assessment or assessments and, presumably, it was the recognition of that practice that prompted plaintiff's witness, Mr. Carlson, to attempt to remove the land value of two accounts from consideration by defendant. The assessor's office refused, testifying to higher values than those appealed from by plaintiff. (Defendant's Opinion and Order No. VL 81-805, at 2.)

■        There is no provision in ORS 305.115, the statute governing appeals to defendant, analogous to the provision in ORS 305.425(3), the statute governing appeals to this court from the defendant, that "the issues of fact and law shall be restricted to those raised by the parties in the appeal to the department."

■        Query: What are the parameters of the restriction? This provision was a part of the bill creating this court and appeared in the sentence immediately following the sentence providing that, "[a]ll proceedings before the court shall be without a jury and de novo." 1961 Or Laws ch 533, § 16. Initially, insofar as property tax valuation cases were concerned, the issue of fact involved was "the true cash value of the property." *Balderee v. Commission,* 2 OTR 142, 145 (1965). This meant that the amount of the assessment or the approach or approaches to value utilized by the appraiser in determining the value of the assessment were not issues of fact within the meaning of ORS 305.425(3). This was made quite clear in *Wilson v. Commission,* 3 OTR 312, 313 (1968). That case involved a decision of this court that the true cash value of a ranch in 1964 was $900,000. The value was increased by the county assessor to $1,101,780 in 1967. At the hearing before the State Tax Commission, the assessor conceded that the increase was not based upon any material change in value or upon any new facts. This court, nevertheless, held that:

> "1.   This court is not bound by any stipulation, concession or evidence given by anyone in a hearing before the commission because trials in the tax court are de novo proceedings under ORS 305.425." (3 OTR at 313.)

No mention whatever of the statutory provision enacted at the same time by the legislature as "de novo" restricting issues of fact and law "to those raised by the parties" was made.

This construction was not followed in nonproperty tax cases, however. Thus, in a matter involving the personal net income tax, one of the parties moved to amend the complaint by adding an allegation raising a constitutional issue. The other party objected, relying on ORS 305.425(3). The court sustained the objection, finding that: "No issue of constitutionality was raised in the appeal to the department." *Jonsson v. Dept. of Rev.,* 4 OTR 376, 381 (1971).

The construction of ORS 305.425(3), insofar as property tax valuation cases were concerned, appears to have remained unchanged, as indicated by *Nepom v. Dept. of Rev.,* 4 OTR 531, 536 (1971), wherein the court observed "[t]he fact that the defendant's witness changed the appraisal approach from that used before the county board of equalization is not significant; the proceedings before the Oregon Tax Court are treated as 'original, independent proceedings and shall be tried without a jury and de novo.' ORS 305.425." Actually ORS 305.425(3) is not applicable to hearings before county boards of equalization and, accordingly, the court's statement is correct.

However, in 1976, two property tax cases were decided in which this court modified its position somewhat. The first case involved the failure to register an aircraft by the statutory due date. At the trial, the plaintiff claimed hardship, pursuant to ORS 307.475. This court stated: "The record in this suit does not show that plaintiff ever appealed to the director under the specific provisions of ORS 307.475, and, consequently, the court is precluded from consideration of this issue. ORS 305.425(3)." *Norbud, Inc. v. Dept. of Rev.,* 6 OTR 335, 337 (1976).

Actually, this case represents no departure from a property tax valuation case in that the fact situation in *Norbud* is analogous to the fact situation in *Jonsson, supra.* The second case, however, *Bauman et al v. Dept. of Rev.,* 6 OTR 426 (1976), does reflect a modified position insofar as property tax valuation cases are concerned. In that case, the defendant's order affirmed the value of the improvements at $3,801,000. Plaintiffs' complaint prayed for a reduction to $2,219,700. At trial defendant changed its approach to value, substituting cost for income and asserted a value of $4,405,700. This court held that:

> "Under ORS 305.425, the proceedings in this court are tried de novo; *i.e.,* a new trial as to the admission of evidence, *but on the same issues as were presented to the administrative tribunal.* [Emphasis supplied.] It must find the alleged true cash value shown by the preponderance of the evidence *and within the scope of the pleadings.* * * *

"* * * * *

■ "* * * If, subsequent to the issue of its order from which appeal is taken to the Tax Court, the administrative agency, through further study, believes that the true cash value of the subject property on the assessment day should be increased, it should affirmatively plead the increased amount." (6 OTR at 438-39.)

The department had not so pleaded and, accordingly, in effect, was restricted to the value stated in its opinion and order.

The court however, in the following year, did not follow this salutary modification of past decisions. In the case there involved, a centrally assessed company had been assessed for property tax purposes by the department as of January 1, 1975, at a true cash value of $446,670,000. The company requested a reduction. Its request was denied and it appealed. The defendant filed a motion to file an amended answer alleging true cash value as of January 1, 1975, was $560,067,000. In oral argument on the motion, the department proposed a further amendment in true cash value as of January 1, 1975, at $570,472,000. This court allowed the motion (permitting the filing of the amended answer). When plaintiff rested its case, the defendant offered, and the court received in evidence, new appraisals in which there were substantial departures from the appraisal theories originally used by the department and also a value substantially different from the value pled in the department's amended answer. *Pacific Power & Light Co. v. Dept. of Rev.,* 7 OTR 203, 210-212 (1977). Pacific Power & Light Co. appealed. The Oregon Supreme Court reviewed the foregoing, stating:

"The tax court approved defendant's motion to file these amended answers based upon its interpretation of ORS 305.425(3) * * *. This decision is not disputed by the parties before this court." *Pacific Power & Light Co. v. Dept. of Rev.,* 286 Or 529, 532, 596 P2d 912 (1979).

The rationale for this court's holding that the approach or approaches utilized by an appraiser in determining the amount of the assessment were not issues of fact within the meaning of ORS 305.425(3) is clearly enunciated in a case wherein this court stated:

"If either the taxpayer or assessor can improve his case, as he moves from successive administrative hearings to the court, by using new approaches (justifed by further study) or offering stronger comparable sales (discovered through greater diligence), these changes in presentation are permitted under the statutory provision for a presentation 'de novo,' so long as they aid in reaching the goal of true cash value." *Price v. Dept. of Rev.,* 7 OTR 18, 23 (1977).

The rationale for so holding fails, however, in light of the Oregon Supreme Court holding in *Pacific Power & Light Co. v. Dept. of Rev., supra,* at 533, wherein Justice Lent states: "[W]hether in any given assessment one approach should be used exclusive of the others or is preferable to another or to a combination of approaches is a question of fact."

That being so, it necessarily follows that ORS 305.425(3) precludes either party subsequently modifying his, her or its position as to the true cash value of the property or as to the valuation approach or approaches utilized on appeal to the department. It is just and equitable that this be so. The local assessor or the defendant in certain circumstances makes the original assessment. At this juncture, under current procedures, the taxpayer has to make a decision as to whether it is likely to be worth the expense of being required (1) to bear the burden of proof (OAR 150-305.115-(B); ORS 305.427) by retaining a competent qualified counsel and one or more appraisers; and (2) exhaust his administrative remedies by prosecuting appeals to the county board of equalization, the Department of Revenue and this court. *Erwin v. Dept. of Rev. et al,* 7 OTR 539, 544-545 (1978), and *Rosboro Lbr Co. v. Heine et al,* 8 OTR 221, 226 (1979). If the taxpayer decides to go forward, it is the value initially found by the assessor or the defendant that is being contested.

Long ago, Adam Smith set forth the goals of taxation in his *Wealth of Nations,* Book V, ch II. One of those goals was that "[t]he tax which each individual is bound to pay, ought to be certain * * *. [T]he quantity to be paid, ought all to be clear and plain to the contributor." The New York Court of Appeals indicated that certainty should not be abrogated by appealing an assessment when it stated:

"When he [the plaintiff] takes the assessment into court,

asking for a reduction thereof, there is nothing in his action which implies a consent to have the assessment increased or a willingness to litigate that question, nor can the action of the commissioners of taxes and assessments in resisting his application for a reduction reasonably be construed into a notice from them that they will ask for an increase." *People v. O'Donnel,* 198 NY 48, 52, 91 NE 276, 277 (1910).

We believe this to be better reasoning than that heretofore followed by this court. Accordingly, ORS 305.425(3) is enforced herein by restricting both parties to the value alleged in the proceeding before the defendant as indicated on Chart 2.

## HIGHEST AND BEST USE

During the past decade, the oil crisis and double-digit inflation resulted in a fuel shortage and an increase in the price of gasoline. This, in turn, led to reduced hours of operation, conversion to partial or total self-service, station closing or conversion of existing stations from uses other than the sale of petroleum products. The prices paid during the period 1960-1970 were reflections of the great demand at that time for property suitable for gasoline service stations and the extremely short supply of sites that were available. Prices paid today reflect a vast oversupply of gasoline service stations. *Encyclopedia of Real Estate Appraising* ch 43 (Friedman ed, 3rd ed 1978), at 951-952.

Plaintiff's witness, Mr. Paget, in discussing economic obsolescence, testified similarly (Transcript 12-20), as did plaintiff's appraiser, as he discussed the appraisals involved generally (Plaintiff's Exhibit 1 at 10) and as he discussed his appraisal of each of the five properties involved. The foregoing is reflected in the fact that plaintiff's appraiser found only two of the five properties to have a highest and best use as a service station (Plaintiff's Exhibit 4 at 6; Plaintiff's Exhibit 5 at 6), the other three having an alternative highest and best use. (Plaintiff's Exhibit 2 at 5, professional office, intense retail commercial or high-rise residential; Plaintiff's Exhibit 3 at 7, recreational vehicle or boat sales, retail commercial or service; Plaintiff's Exhibit 6 at 5, very limited possibilities for alternate use.)

■    As a first step in estimating value, the appraiser must form an opinion as to the highest and best use to which the property may be put. *Oregon Broadcasting v. Dept of Rev.,* 7 OTR 379, 382-383 (1978). This for the reason that if it is determined that the highest and best use of a gasoline service station is some alternative type of use, the property must be appraised as though it were put to such other use. For example, if the highest and best use is a retail liquor store, then the property should be appraised as such, listing and comparing factors peculiar to a liquor store site. If the highest and best use is as an office building, then the property should be appraised as a proposed office building. *Encyclopedia of Real Estate Appraising, supra,* at 952. Defendant's appraiser, in his appraisal, mentioned highest and best use with reference to only one property (Account No. 280139) indicating that such use as a service station was questionable. (Defendant's Exhibit A at 9.) At the trial, however, Mr. Rose testified that the highest and best use of that property was neighborhood commercial, a convenience store location or an office (Transcript at 87-88). On Account No. 437358, Mr. Rose testified at the trial that the highest and best use was strip commercial-neighborhood commercial type development. (Transcript at 118.) On Account No. 461630, Mr. Rose testified that the highest and best use was mixed commercial-industrial. (Transcript at 198.) Mr. Rose did not testify as to the highest and best use of Account Nos. 630283 or 44816. Mr. Carlson indicated two properties as having a highest and best use as a service station, *i.e.,* Account Nos. 630283 and 461630. Mr. Rose did not indicate either as such.

■    Highest and best use is a specific use, not a general use, such as any one of a number of uses permitted by a zoning ordinance designation. If highest and best use as a service station is selected, the rationale for selecting that use depends upon a number of factors such as adequacy of the size of the site, neighborhood business potential, grade of street and topography, visibility from roadway, compatibility of traffic flow, transient business potential, ease of approach, etc. *Encyclopedia of Real Estate Appraising, supra,* at 954. Mr. Carlson clearly has an edge over Mr. Rose in terms of knowledge of the market and the industry, in that he has considerable experience as a fee appraiser for Standard Oil

Company, Humble Oil Company, Phillips Petroleum Company, Franko Oil Company, Truax, Oil Company and plaintiff herein, much of which involved the appraisal of service stations for property tax purposes. (Plaintiffs Exhibit 1 at 4, 5.) His specific determination of highest and best use is therefore more convincing than Mr. Rose's general determination.

As to the land value of Account No. 630283, Mr. Carlson's market data analysis utilized ten sales in the immediate vicinity, adjusted for time, location, size, frontage and access, and with respect to three sales, a "motivational adjustment." With the foregoing adjustments, the values range from $4.32 to $8.35 per square foot. After eliminating the high and low sales, Mr. Carlson determined, based on the median, a square foot value of $5.85. (Plaintiff's Exhibit 4 at 9.) Mr. Rose's analysis utilized three sales, adjusted for time and location with values ranging from $8.18 to $8.78. Mr. Rose selected a square foot value of $8.40. (Defendant's Exhibit A at 19-20).)

As to the land value of Account No. 461630, Mr. Carlson's market data analysis utilized eight sales, adjusted for time, location, size, in three instances for traffic and in one instance for zoning. (Plaintiff's Exhibit 5, at 9.) Mr. Rose utilized three sales and adjusted for time, location, stability and shape. (Defendant's Exhibit A at 28.) Each appraiser segregated the land into categories. Mr. Carlson into four categories, Mr. Rose into two categories, depending on the amount of land regarded as partially or wholly filled and compacted. Both Mr. Carlson and Mr. Rose have utilized the market approach to determine land value. That approach is a comparative method wherein the appraiser compares the subject property with properties recently sold and adjusts for differences. Ideally service stations should be compared with service stations, but as a practical matter, a sufficient number of comparable sales is often lacking. Several of the ten sales included in Mr. Carlson's analysis of Account No. 630283 however, had been service stations. (Transcript at 156-157.) One of those sales was also utilized by Mr. Rose, and regarded by him as the best indicator of value. Defendant attacked Mr. Carlson for making too many adjustments in this instance, *i.e.* for time, location, size, frontage and access. Mr. Rose made

one adjustment, *i.e.*, for time. Adjustments for differences, however, are based upon the same considerations that were used to determine highest and best use. The adjustments made by Mr. Carlson were critical to achieving a comparable in this instance and accordingly, were properly taken into consideration in his market data analysis. Under the circumstances, his determination of $5.85 per square foot (Plaintiff's Exhibit 4 at 14) is more convincing than Mr. Rose's determination of $8.40 (Defendant's Exhibit A at 19).

Adjustments made by Mr. Carlson were critical to achieving a comparable in this instance and, accordingly, were properly taken into consideration in his market data analysis. Defendant also attacks the use by Mr. Carlson of an adjustment for motivation, alleging that it is "a term unique to Mr. Carlson." (Defendant's Memorandum at 2.) It is not. For example, *Encyclopedia of Real Estate Appraising, supra,* at 67, states:

> "[T]he appraiser must delve into the real motivation of buyers and sellers and try to fathom the reasons behind actual prices at which comparable properties were sold."

*See also The Appraisal of Real Estate,* ch 15 (7th ed 1978), at 290-292. Under the circumstances, Mr. Carlson's determination of land value for Account No. 630283 of $83,800 and for Account No. 461630 of $61,600 is more convincing than Mr. Rose's determination of land value for Account No. 630283 of $120,330 and for Account No. 461630 of $180,770.

Insofar as the value of improvements are concerned, Mr. Carlson used a residual method, *i.e.*, deducted his determination of land value from sales price, resulting in the value of the improvement. As such, the value of the improvements were not directly estimated. (Transcript at 53.) Mr. Rose, on the other hand, relied on the cost approach, using the 1980 edition of the state's factor book. (Transcript at 88.) Plaintiff's witness, Mr. Paget, testified that the improvements on independent operations, such as plaintiff's, contributed "hardly anything" to value. (Transcript at 15.) Mr. Carlson indicated that analysis of the market indicated that the total of three elements of depreciation, *i.e.*, physical deterioration, functional inadequacies and economic obsolescence "range from 60 percent to more than 100 percent." (Plaintiff's

Exhibit 1 at 11.) These statements are in accord with *Encyclopedia of Real Estate Appraising, supra,* at 964, wherein the following appears:

> "The cost approach should not be relied on extensively in valuation of completed service station projects. * * *
>
> "* * * * *
>
> "Land is the basic element of value in gasoline service stations; improvements are usually only an appendage to be added to the land."

Notwithstanding the foregoing, Mr. Carlson estimates that a substantial amount for improvements on Account No. 630283, *i.e.,* $15,000, and on Account No. 461630, $33,000. While these amounts are substantially less than Mr. Rose's estimates of $22,310 for Account No. 630283 and $38,780 for Account No. 461630, the two appraisers would be quite close if Mr. Rose had, with reference to Account No. 630283, recognized, in addition to depreciation and functional obsolescence, economic obsolescence (Defendant's Exhibit A at 22-23) and with reference to Account 461630 recognized both functional and economic obsolescence, rather than depreciation only (Defendant's Exhibit A at 30). Under the circumstances, Mr. Carlson's determination of improvement values is more convincing than Mr. Rose's determination.

■     As to the balance of the three properties, neither of the parties' appraisers utilized properly the concept of highest and best use. This court, in one of its earlier opinions after creation of the court, observed that "the entire concept of value presupposes the theory of highest and best use." *Williams v. Commission,* 1 OTR 265, 267 (1963). Put another way, one cannot arrive at a property's value without determining first its highest and best use. While both appraisers made the error in all proceedings before the Tax Court, the burden of proof falls upon the party seeking affirmative relief. ORS 305.427. The plaintiff, accordingly, has failed to meet the burden and must pay the penalty for so doing. The defendant's Opinion and Order is affirmed as to the true cash value for Account Nos. 437358, 280139 and 44816.

Earlier in this opinion both parties were restricted to

values alleged in the proceedings before defendant as indicated on Chart 2. (See page 383, *supra.*) The total land and improvement value of Account No. 630283 alleged by plaintiff before defendant was $97,500. The court having found the plaintiff more persuasive, accordingly, the defendant's Opinion and Order No. VL 81-805 is amended to provide that Account No. 630283 shall be valued at $97,500. The total land and improvement value for Account No. 461630 alleged by plaintiff before defendant was $59,200. The court, having found the plaintiff more persuasive, accordingly, the defendant's Opinion and Order No. VL 81-805 is amended to provide that Account No. 461630 shall be valued at $59,200.

The valuation of the remaining three accounts determined by the defendant in the hearing below is hereby affirmed. Therefore, the true cash value of land and improvements on January 1, 1979, was:

| | |
|---|---|
| Account No. 437358 | $ 67,510 |
| Account No. 280139 | 151,320 |
| Account No. 44816 | 61,150 |

## ON PETITION FOR REHEARING

Opinion and order modifying decision rendered April 5, 1984.

**SAMUEL B. STEWART, Judge.**

On February 13, 1984, this court rendered its opinion in the above-entitled matter which, among other things, construed the phrase in ORS 305.425(3) providing "the issues of fact and law shall be restricted to those raised by the parties in the appeal to the department" to be applicable to ad valorem cases involving the issue of true cash value. This had not been the construction previously. Defendant timely filed a Motion for Rehearing, an Order was issued allowing the motion, and rehearing was held on March 28, 1984, beginning at 1:30 p.m. in the court's courtroom, Salem. Defendant appeared by Mr. G. F. Bartz, Assistant Attorney General Tax Section, General Counsel Division, Department of Justice. Plaintiff appeared by Mr. James H. Conley, Attorney at Law, and Mr. Russell M. Helterline, of Black, Helterline, Beck & Rappleyea, Attorneys at Law, Portland, appeared as amicus curiae.

Messrs. Conley and Helterline agreed that the frequent increase in true cash value by defendant on appeal to this court should be curtailed but that the procedure utilized for doing so should be that defendant bear the burden of proof of showing a factual basis for the increased value, not by enforcing ORS 305.425(3). The rationale for the foregoing was that enforcing ORS 305.425(3) conflicts with ORS 305.425(1), *i.e.,* de novo provision, and the last sentence of ORS 305.435, *i.e.,* the court not restricted to the values pled by the parties. Mr. Bartz did not agree that defendant frequently increased true cash value on appeal and, accordingly, did not comment on the burden of proof suggestion of Messrs. Conley and Helterline. Rather, he also dealt with the alleged conflicts between ORS 305.425(3), ORS 305.425(1) and ORS 305.435 and the "Court's departure from a well established legal path

laid out by prior Tax Court judges following legislative intent, and familiar to the private and public bar."

The court freely admits to departure from a well-established legal path but it has done so because it has concluded that path was in error. The error was failure to give effect to language included in the original Act creating the court and continuing unchanged in the language of the statute to this day. That language provides:

> "In the case of proceedings to set aside an order or determination of the department, * * * the issues of fact and law shall be restricted to those raised by the parties in the appeal to the department." (ORS 305.425(3).)

The language is clear and unambiguous when read in connection with the statute governing appeals filed with the Department of Revenue by petitioning taxpayers. ORS 305.275 provides in relevant part:

> "(5) All appeals shall be taken by filing a petition with the director * * *. The petition shall state the facts relied upon for relief, * * * any statement or proposition of law relied upon, the relief requested, * * *."

In a property tax case involving true cash value, the "relief requested" is a reduction of "X" dollars.

While there may be a conflict between the statutory provision restricting issues of fact and law and the statutory provision providing for trials de novo in the sense that restricting issues of fact and law limits the de novo aspects of the trial, nevertheless the legislature, in drafting 1961 Or Laws ch 533, § 16, obviously intended that result, otherwise the language would not have been used. To construe the statute otherwise would be to presume the legislature would do a futile thing. Such a presumption is not reasonable. 2A Sutherland *Statutory Construction* § 45.12 (4th ed 1972). The language was used and one effect reasonably to be anticipated from the language's use was to insure that all the evidence that could be marshalled pro and con would be presented to the defendant department and available to it in making a judgment on the merits. Stressing de novo at the expense of restricting issues of fact and law, on the other hand, tends to insure that defendant department does not have all or the best evidence available to

it, making it less possible to settle appeals at the defendant department's level.

Messrs. Bartz, Conley and Helterline alleged conflict between ORS 305.425(3), the statutory provision restricting issues of fact and law, and ORS 305.435, which reads, in relevant part, as follows:

> "Where the determination of true cash value * * * is an issue before the court, the court has jurisdiction to determine such value on the basis of the evidence before it, without regard to the values pled by the parties."

This provision was enacted in 1977, 1977 Or Laws ch 870, § 30, in response, it is alleged, to *Bauman et al v. Dept. of Rev.*, 6 OTR 426 (1976), discussed by this court at 6 and 7 of its February 13, 1984, opinion. That case involved a situation where this court found that the evidence supported a higher value than the defendant department had alleged at its hearing. The question was: Could the court properly find a higher value? The court held that the defendant department could do so pursuant to its supervisory power but that the court had no supervisory power under which it could initiate increases of value. The court then went on to say:

> "Under ORS 305.425, the proceedings in this court are tried de novo; *i.e.* a new trial as to the admission of evidence, but on the same issues as were presented to the administrative tribunal. It must find the alleged true cash value shown by the preponderance of the evidence *and within the scope of the pleadings. (Bauman et al, supra,* at 438.)

What the legislature did, therefore, in enacting the 1977 amendment to ORS 305.435, was to state that this court could, if it felt the evidence warranted the conclusion, increase the value over that pled by the parties. The court does not regard the 1977 legislative amendment to have repealed, by implication, ORS 305.425(3) so that either plaintiff or defendant can freely modify their respective determinations of true cash value as set forth in the defendant department's opinion and orders.

There is a presumption against repeal by implication based on the concept that the legislature is presumed to achieve a consistent body of law. In accordance with this

principle, subsequent legislation is not presumed to effectuate a repeal of existing law in the absence of that expressed intent. 1A Sutherland *Statutory Construction* § 23.09 (4th ed 1972). There is no expressed intent by the legislature to repeal ORS 305.425(3).

The presumption against implied repeals can be overcome by showing that the two acts are irreconcilable, clearly repugnant as to vital matters to which they relate, and so inconsistent that the two cannot have concurrent operation. 1A Sutherland *Statutory Construction* § 23.10 (4th ed 1972). The foregoing cannot be shown to exist in this instance in that the statutory provisions involved can reasonably co-exist.

Accordingly, the court affirms its February 13, 1984, opinion insofar as it precludes either party subsequently modifying his, her or its position as to the true cash value of the subject property because it remains convinced that ORS 305.425(3), if enforced, will achieve the salutary purposes indicated in the original opinion. The court, however, amends its February 13, 1984, opinion insofar as it precludes either party subsequently modifying his, her or its position as to the valuation approach or approaches utilized. It does so in recognition that there is a difference between the mass appraisal techniques of necessity utilized by the several county assessors and defendant department in supervising the several county assessors and appraisals performed by fee appraisers. By virtue of the burden of proof and the nature of the witnesses utilized at the hearing, it is quite likely except in utility assessments or industrial appraisals performed by defendant department, that the parties at the hearing often will subsequently change their position on the valuation technique approaches utilized by upgrading the professionalism of the appraisal witnesses at the trial before this court.

Accordingly, the court affirms its February 13, 1984, opinion only insofar as it precludes either party involved in contesting a utility assessment or an industrial appraisal performed by defendant department from modifying his, her or its position as to the valuation approach or approaches utilized.

Now, therefore, it is ORDERED that the court's opinion of February 13, 1984, precluding the parties from modifying their positions as to the true cash value of the subject property and insofar as it precludes either party in a utility assessment or an industrial appraisal performed by the defendant department from modifying his, her or its position as to the valuation approach or approaches utilized is affirmed.

Rule 68 of this court provides that the prevailing party shall submit "a form of decree." Of the five properties appealed by plaintiff, defendant was the prevailing party as to three of the five. Accordingly, defendant is requested to submit, pursuant to Rule 68, a form of decree.